**IN-SINK-ERATOR MANUFACTURING COMPANY, a Wisconsin corporation, Plaintiff-Appellee,**

v.

**WASTE KING CORPORATION, a California corporation, Defendant-Appellant.**

No. 14783.

United States Court of Appeals Seventh Circuit.

May 13, 1965.

William R. McNair, Chicago, Ill., Ford Harris, Jr., Warren L. Kern, Los Angeles, Cal., Richard S. Phillips, Chicago, Ill., for defendant-appellant, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

Charles B. Cannon, Chicago, Ill., Leo C. Duersten, George J. Kuehnl, Racine, Wis., for plaintiff-appellee.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

In-Sink-Erator Manufacturing Company, a Wisconsin corporation, plaintiff-appellee, brought suit in the District Court against Waste King Corporation, a California corporation, defendant-appellant, seeking a declaratory judgment, with incidental equitable relief, adjudicating plaintiff's non-liability for charged infringement of Jordan Patent No. 2,-879,949.[1] Count I of the complaint alleges the invalidity of the patent and the absence of infringement by the plaintiff. Count II avers the plaintiff is protected from the claims of infringement asserted by the defendant by reason of the release provisions of an agreement settling earlier litigation between the parties. These allegations of release and estoppel were put in issue by the defendant. The defendant also filed a counterclaim charging plaintiff with infringement of Claim 7 of the '949 patent.

Upon plaintiff's motion, made pursuant to Rule 42(b) of the Federal Rules of Civil Procedure (28 U.S.C.A.), a separate trial was had of the issues presented by Count II. In a memorandum of decision,[2] embodying its findings of fact and

conclusions of law, the District Court found and concluded that the release provisions constitute a bar to the assertion of defendant's claim of infringement. Accordingly, a final judgment order was entered against the defendant.

The plaintiff and defendant are competing manufacturers of electric garbage disposers designed for installation in household kitchen sinks. The record reveals that the current controversy began in August 1962, when counsel for the defendant, Waste King, wrote a letter to the plaintiff charging it with infringement of the '949 patent, and more particularly, of the disclosures of Claim 7 of that patent, relating to a mounting assembly utilizing a grooved thin wall steel sleeve or strainer flange and snap ring construction for installing a garbage disposer unit in a kitchen sink. The defendant, Waste King, it appears, is the exclusive licensee with power to sue for infringement of this patent, originally issued to Hans Jordan on May 31, 1959. An earlier patent issued to Jordan and licensed to Waste King, Jordan Patent No. 2,670,143,[3] was the basis of two earlier suits between these same parties. The first, described as the Wisconsin suit, was filed by the defendant, Waste King, against In-Sink-Erator in the United States District Court for the Eastern District of Wisconsin on November 28, 1958, Civil Action No. 58-C-338, and charged a breach of contract consisting of a failure to pay royalties under an alleged license agreement between the parties under the '143 patent. The second action, also filed by Waste King against In-Sink-Erator, charged infringement of the '143 patent, upon the theory that the license agreement was terminated. This second suit was filed on May 30, 1959, in the United States District Court for the Southern District of California, Civil Action No. 291-59-K, and is described as the California suit. In it In-Sink-Erator counterclaimed for injunctive relief and an accounting for damages for unfair

1. Hereinafter referred to as the '949 patent.

2. Reported at 230 F.Supp. 55.

3. Hereinafter referred to as the '143 patent.

competition. In both the Wisconsin and the California suits In-Sink-Erator's alleged use of a rubber splash guard in the disposer opening, a feature allegedly protected by the '143 patent, was the principal issue.

The Wisconsin and California suits were disposed of without adjudication when on March 29, 1962, the parties entered into an agreement of compromise and settlement. The agreement recites the pendency of the Wisconsin and California cases, Waste King's desire to obtain a license under a designated patent owned by In-Sink-Erator, and in other pertinent parts is as follows:

"Whereas, Waste King is the exclusive licensee with the right to grant sublicenses under United States Letters Patent No. 2,670,143, issued on February 23, 1954, which, together with all reissues and extensions thereof, are hereinafter referred to collectively as the 'Jordan Patent'; and

\* \* \* \* \* \*

"Whereas, it is the desire of the parties hereto to settle and terminate the Wisconsin Case and the California Case; and

"Whereas, it is the desire of In-Sink-Erator to obtain a paid-up, non-exclusive, non-cancellable license under said Jordan Patent and a release of all possible liability arising out of the facts pleaded and involved in the Wisconsin Case and the California Case; and

\* \* \* \* \* \*

"Now, therefore, in consideration of the premises and the mutual covenants set forth hereinafter, the parties have agreed as follows:

"1. In-Sink-Erator shall, prior to April 1, 1962, pay to Waste King the sum of Seventy-Five Thousand Dollars ($75,000.00), in full payment of any and all profits, and/or damages, and/or royalties and/or costs, and/or other liability of any kind whatsoever which may accrue, or which may have accrued, or which may have become due and payable to Waste King, or its predecessor or predecessors in interest, up to and including the date hereof, from In-Sink-Erator arising from any alleged breach of contract, or arising from any alleged infringement of any of the claims of said Jordan Patent, or arising from any of the facts pleaded in the Wisconsin Case, or the California Case.

"2. Each of the parties hereto hereby agree that their respective counsel, forthwith after the payment referred to in Paragraph 1 hereof, shall execute and file stipulations of dismissal in the Wisconsin Case and California Case, respectively, in the forms attached hereto as 'Exhibit A' and 'Exhibit B'.

"3. Effective upon the filing of the dismissals referred to in Paragraph 2 hereof, each of the parties hereto, for itself, its legal representatives, successors, and assigns, does hereby remise, release, and forever discharge the other party hereto, its legal representatives, successors, assigns, distributors, dealers, and customers, of all, and from all, and all manner of action and actions, cause and causes of action, claims and demands, whatsoever, in law or in equity, that it ever had, now has, or hereafter may have, arising from any alleged infringement of any of the claims of the Jordan Patent or arising from any of the facts pleaded in the Wisconsin Case or the California Case.

"4. Waste King for itself, and joined by, for, and with the consent and approval of, Given Machinery Company, a signatory hereto, hereby grants to In-Sink-Erator, effective upon the filing of the dismissals referred to in Paragraph 2 hereof, and continuing until the expiration of the last expiring patent coming under the provisions of this Paragraph 4 hereof, a paid-up, non-cancellable, non-exclusive, right and

license throughout the world to make, use, and sell under said Jordan Patent and under all claims of all other United States and foreign Letters Patent, now or hereafter owned by Waste King and/or said Given Machinery Company or as to which either Waste King or said Given Machinery Company now has or acquires the right to grant licenses or sublicenses, which claims define substantially the same subject matter as any claim or claims of said Jordan Patent (but excluding any claims of any such other Letters Patent, which include anything not disclosed in said Jordan Patent)."

\* \* \* \* \* \*

The record discloses that a pre-trial conference order was entered in the California case. That order sets forth (a) the facts admitted and requiring no proof; (b) facts which, although not admitted, are not to be contested by evidence to the contrary; (c) the issues of fact and the issues of law remaining to be litigated upon trial; and (d) the exhibits each party proposes to offer in evidence at the trial. The exhibits so listed by In-Sink-Erator included certain physical specimens of its garbage disposers, or portions thereof; drawings thereof; and a brochure describing In-Sink-Erator's disposers, which it is conceded embody or illustrate constructions now charged by Waste King to infringe Claim 7 of the '949 Jordan patent.

The settlement agreement recites that it shall be deemed to have been executed at Los Angeles, California. In-Sink-Erator does not dispute Waste King's contention that the construction and application of the agreement is to be governed by California law.

The District Court characterized the agreement as reflecting "a mutual purpose of the parties to settle all points of controversy between them, and to allow each to continue its business as then carried on, without concern about the other's patents or other claims" and concluded that since the current claim of

infringement of the '949 patent arises from elements of the devices pleaded as infringing the '143 patent in the California suit, the current claim of infringement of the '949 patent falls within the scope of the provision of the agreement barring claims "arising from any of the facts pleaded" in the California suit.

The appellant, Waste King, contends, among other things, that it is plain from the agreement itself that the release is not a general release but is limited to the classes of things enumerated and that Waste King's current claim of infringement of the '949 patent by In-Sink-Erator is not a claim "arising from any of the facts pleaded in" the California case. The appellee, In-Sink-Erator contends, in substance, that the pre-trial conference order entered in the California case is a "pleading" and that the District Court did not err in concluding that the current claim of infringement of Claim 7 of the '949 patent arises "from facts pleaded" in the California case because physical specimens, drawings, and a descriptive and illustrative brochure listed in the pre-trial conference order as exhibits proposed to be introduced upon trial of the case disclose embodiments of the structural features and elements now charged to infringe the '949 patent.

■■ Appellant concedes that a pre-trial conference order constitutes a pleading insofar as it establishes, enlarges, or limits the issues of fact or of law in the case. Cf. United States v. Hougham, 364 U.S. 310, 315–316, 81 S.Ct. 13, 5 L.Ed.2d 8; Clark v. United States, D.C.Or., 13 F.R.D. 342, 344; Local Rule 9(j) of the United States District Court for the Southern District of California. But appellant points out that none of the issues of fact or of law involved in the California case concerned or related to the '949 patent or to any claim or demand based thereon, and urges that the mere incidental and unrelated disclosure made by a proposed exhibit listed in a pre-trial conference order does not constitute a "fact pleaded" in the cause. We agree with the appel-

lant that the extraneous and irrelevant disclosures here made by the proposed exhibits did not become "facts pleaded" in the action merely because the proposed exhibits were listed in the pre-trial conference order.

Examination of the settlement agreement reveals that it is not a general release or cross-licensing of patents owned or controlled by the parties. It enumerates the class of claims released and the scope of the licenses granted. And, the provisions of paragraph 3 of the agreement extending the release beyond claims arising from the alleged infringement of the '143 patent to include claims "arising from any of the facts pleaded" in the Wisconsin or California cases was not without subject matter contemporaneously in controversy between the parties, i. e., the claim in the Wisconsin suit for royalties allegedly due under a license agreement concerning the '143 patent and the unfair competition counterclaim in the California suit.

■ We perceive nothing ambiguous in the provisions of the settlement agreement. And, in our opinion, the broad characterization of the agreement expressed by the District Court does not comport with the governing principle of California law set forth in Shriver v. Kuchel, 113 Cal.App.2d 421, 248 P.2d 35:

"Compromise agreements, however, regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time.'"

The judgment order of the District Court is reversed and the cause is remanded to the District Court for trial or other appropriate disposition of Count I of plaintiff's first amended complaint and the defendant's counterclaim.

Reversed and remanded.

KNOCH, Circuit Judge (dissenting).

With regret, I find myself compelled to dissent. The Wisconsin and California cases between the parties here, based initially on the '143 patent, were filed on or about November 26, 1958, and March 30, 1959, respectively. The '143 patent related to a waste disposal device embodying a splash guard which (with supporting means for the grinding mechanism) is mounted on and supported by a sleeve adapted to be supported in a sink drain opening.

The '949 patent issued March 31, 1959, about a day or so after the California suit was filed. It relates to a garbage disposal device embodying means including a grooved thin wall steel sleeve and snap-ring construction for supporting the grinding mechanism in a sink drain opening.

The settlement agreement was entered into March 29, 1962. Physical specimens and drawings of portions of the accused devices were among the "facts pleaded" in the prior litigation settled by that agreement of March 29, 1962. The very same elements and features of the current models now accused in connection with the '949 patent were embodied in the models which were accused in connection with '143. Defendant was surely well aware of its own patent claims in '949. That patent is mentioned in a memorandum dated October 19, 1959, and the application for that patent is mentioned in an Amendment of Royalty agreement dated April 18, 1957. Both documents are listed as exhibits which the defendant proposed to offer at the trial of the California case.

I would agree with the District Judge that "the current claim arises from elements of the same device pleaded as infringing in the California suit," and "falls within the scope of the agreement barring claims 'arising from any of the facts pleaded' in that suit." I would affirm the judgment of the District Judge, adopting his Memorandum of Decision as this Court's opinion.