The GILLETTE COMPANY, Plaintiff-Appellant,

v.

The TRAVELERS INDEMNITY COMPANY, Defendant-Appellee.

No. 15501.

United States Court of Appeals Seventh Circuit.

July 13, 1966.

David P. List and Leonard A. Spalding, III, Chicago, Ill., Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., of counsel, for appellant.

Bernard Harrold and Jon R. Waltz, Chicago, Ill., Kirkland, Ellis, Hudson, Chaffetz & Masters, Chicago, Ill., of counsel, for appellee.

Before KNOCH, CASTLE and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought by The Gillette Company ("Gillette") as assignee of Thomson Terminals, Inc. ("Thomson") against The Travelers Indemnity Company ("Travelers") to recover the sum of $36,980.07, upon an employee fidelity bond. During the period from 1962 to March 28, 1963, Gillette stored merchandise consisting of razor blades, razors, shaving creams and deodorants in Thomson, a licensed and bonded public warehouse located in the City of Chicago. At all times pertinent Thomson had in force and effect a comprehensive dishonesty, disappearance and destruction policy of insurance with Travelers which provided, inter alia, coverage for losses of money,

securities and other property the insured (Thomson) should sustain through any fraudulent or dishonest actions by any of its employees acting alone or in collusion with others. Upon Travelers' refusal to pay losses demanded by Thomson, the claim was duly assigned to Gillette.

Jurisdiction is based upon diversity of citizenship, and no question is raised but that Gillette as assignee may properly maintain the action. The case was tried to the Court without a jury, and at the conclusion of plaintiff's presentation, the Court, on defendant's motion, decided the issues involved against plaintiff. From the judgment entered in accordance therewith, plaintiff appeals.

The coverage provided by the policy applied "only to loss sustained by the Insured through fraudulent or dishonest acts committed during the Policy Period by any of the Employees engaged in the regular service of the Insured." Such coverage, however, was limited by certain "Exclusions" set forth in the policy. Those pertinent to the present situation are Secs. 2 and 4. Sec. 2 provides:

"This Policy does not apply * * *

(b) * * * to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss * * * which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees."

Sec. 4 provides:

"If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2(b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees * * *."

Thus, there emerged before the District Court two issues, (1) whether plaintiff's proof of loss "either as to its factual existence or as to its amount" was dependent "upon an inventory computation," and (2) if not, whether plaintiff proved "wholly apart from such computations" that its loss was sustained through the fraudulent or dishonest act or acts of its employees.

The District Court made no formal findings of fact but stated from the bench its conclusion that plaintiff's proof of loss was dependent upon an inventory computation and stated as a fact, "There is insufficient evidence to prove by a preponderance that any employee of Thomson stole any of the missing razor blades."

The same issues are argued here but our power of review, as has often been stated, is limited to the question as to whether the inferences and conclusions drawn from the evidence by the trial judge have any substantial basis in the evidence. If such a basis is present, the process of judicial review is at an end. Gaytime Frock Co. v. Liberty Mut. Ins. Co., 7 Cir., 148 F.2d 694, 696 (citing cases).

Plaintiff on brief states, "As can be seen, exceptive clause 2(b) is extremely broad and, if interpreted absolutely literally, might well make the whole insurance contract purely illusory, since it is almost impossible to prove a loss other than by means of records, unless the thief is caught red-handed." It then follows with the argument that the exceptive clause should be interpreted and applied on the assumption that a reputable insurance company such as Travelers would not resort to chicanery in issuing contracts providing practically no coverage. While we have some sympathy with this argument, we think it must be rejected in

view of the plain, unambiguous language of the policy. It expressly renders the policy inapplicable where proof of the loss or any part thereof is dependent upon an inventory computation. To hold that this specific language should be interpreted to mean something other than that plainly stated would constitute an infringement on the right of the parties to write their own contract.

Plaintiff's proof as it related to the inventory issue consisted in the main of books, records and reports. We agree with the conclusion of the District Court on this issue but think there is nothing to be gained by an extended discussion of it. This is so because assuming that plaintiff's proof of loss was "wholly apart from such computations," it was incumbent upon it to submit evidence which reasonably proved that such loss was in fact due to the dishonesty of one or more of its employees.

On this factual issue the District Court found adversely to plaintiff. Plaintiff proceeded on the exclusionary method, that is, by attempting to demonstrate that there was no reasonable probability that its loss resulted from the activities of those on the outside and, therefore, it must have been by its employees.

A brief summary of the evidence in this respect will suffice. During the period in question there was in effect at Thomson an ADT supervised burglar alarm system consisting of alarm devices on all exterior doors and windows and certain interior doors, which devices in the event of activation registered an alarm at the ADT Central Station located at 29 South La Salle Street, Chicago. When the warehouse closed for the day, a designated employee turned on a switch signaling the ADT Central Station and that office signaled back that this protective system was in operation. During the period from December 1, 1962 through March 28, 1963, there were four entries to the premises at night, made by ADT employees to investigate activations of the alarm system. There were two entries in January, one in Feb-

ruary and one in March. On only one occasion was the ADT man accompanied by Thomson's warehouse foreman. The ADT witness admitted on cross examination that ADT had no record and he had no knowledge of how many of its employees might have had a key to the warehouse.

The razor blades were stored in shipping cartons. During the 1962–1963 period, the most popular Gillette razor blades were the Super Blue Blades, each carton of which had a wholesale value of $162.91. During the relevant period Thomson's foreman testified that he found a carton of Super Blue Blades in a paper bag in the warehouse basement where no Gillette products were stored; that he found three shopping bags hidden behind a radiator, with a carton of blades in each bag, and on another occasion found a number of cartons on the 5th floor, again a floor upon which no Gillette products were stored.

Plaintiff on brief states, "The evidence showed that during the day-time hours no person other than the employees of Thomson were allowed on the warehouse premises unless accompanied by an employee," and "Unauthorized persons were rigorously excluded." The record furnishes scant, if any, support for these assertions. For instance, Thomson's warehouse foreman conceded that numerous persons other than employees had access to the premises. Solicitors, police officers, employees checking the ADT system, fire inspectors and different types of repairmen, electricians and maintenance men were permitted access to the premises, sometimes doing their work under the supervision of Thomson's foreman and other times not.

Plaintiff on brief states, "There was the proof of the apprehension of two employees, Joseph and Williams, by the police in possession of 40 cases of No. 1015's." Defendant in its brief states, "No such evidence was received." The most we can get from the confused state of the record on this point is that on March 28, 1963, certain employees of Thomson, including a Miss Gasser, were

called to the police station and a quantity of Gillette blades was turned over to them. Where, from whom or under what circumstances they were obtained by the police is not shown. There was hearsay testimony, later stricken, that Miss Gasser was requested to sign a complaint against employees Joseph and Williams; however, there is nothing in the record to show what, if any, connection these two employees had with the razor blades in possession of the police.

The most charitable appraisement of which plaintiff's proof on this point is susceptible is that it creates a healthy suspicion that some of Thomson's employees were engaged in stealing razor blades; however, this is not sufficient. The District Court in deciding this issue adversely to plaintiff stated, "I say that on the basis of what has been submitted to me, there is insufficient evidence to prove by a preponderance of the evidence that any employees of the Thomson Terminals, Inc. stole any of the missing razor blades. Those will be my findings of fact."

Plaintiff urgently insists that the Court erred in its refusal to admit a statement of Cleveland Joseph, whom plaintiff was unable to produce as a witness at the trial. The statement was taken by Richard A. McGrath, an attorney for Thomson, and appears in the record as an offer of proof. In the statement Joseph admitted that he was apprehended by the police on March 28, 1963, in possession of some 40 cartons of Gillette Super Blue Blades. At that time he made a statement to the police denying any connection with the theft of blades from Thomson's warehouse.

On June 12, 1963, when the proffered statement was taken by McGrath, Joseph had been convicted of an unrelated theft. The judge advised Joseph at that time "that if he would cooperate with the warehouse in giving information, he would entertain a motion for probation." McGrath told Joseph "that if such a motion was made after a statement was given to me, I wouldn't object to it." Under these circumstances and contrary to his previous statement, Joseph made the statement admitting that he had participated in the theft of razor blades from Thomson's warehouse. In keeping with the inducement offered, he subsequently was granted probation on his conviction on the unrelated theft.

■ We find no occasion to prolong this opinion by a citation or discussion of the cases and textbooks called to our attention relative to the admissibility of such a statement. One element usually required is that the declarant has "no probable motive to falsify the facts stated." With a prison sentence staring him in the face, with a promise of probation, if he cooperated, coming from the sentencing judge, Joseph had a strong motive to falsify. Plaintiff argues that in any event the circumstances under which the statement was made did not affect its competency but went only to its weight or credibility. Even so, it is not discernible how plaintiff was prejudiced by the ruling because the Court in refusing to admit the statement stated, among other things, "It is without worth." We hold there was no error in the Court's refusal to admit the statement.

We have read the numerous cases cited by the parties in support of their respective contentions and find them of little aid. Reference to a few of the cases, mainly relied upon by plaintiff, will show that they generally are dependent upon the scope of the coverage provided by the policy and, more particularly, the facts of the case. A recent case which plaintiff asserts is much in point is Lumbermen's Mutual Casualty Co. v. Norris Grain Co., 343 F.2d 670 (CA-8). There, the contract of insurance required that in case of inventory losses caused by unidentifiable employees, the evidence must establish such fact conclusively. There were very substantial inventory losses of soybeans from a grain elevator. The case is at once distinguishable because the policy did not make inapplicable any loss dependent upon an inventory computation, as does the policy here. Also, the plaintiff produced as a witness an employee who had participated in the

theft activities. More important, as stated in plaintiff's brief, "The Court reviewed the authorities and concluded that the evidence was sufficient to warrant a finding by the jury that loss was due to employee dishonesty. In fact, what plaintiff proved in *Lumbermen's* was negative, i. e., that the losses could not have occurred without employee collusion." In other words, the Court affirmed a judgment based upon a jury's verdict in favor of the plaintiff. In contrast, the instant case was tried to the Court without a jury, which found the issues adversely to plaintiff.

Another case which plaintiff asserts is strikingly similar both on the facts and the law is Betty v. Liverpool & London & Globe Insurance Co., 310 F.2d 308 (CA-4). There, the policy excluded from coverage "Unexplained loss or mysterious disappearance of property (except property in the custody of carriers or bailees for hire); or loss or shortage of property disclosed on taking inventory * * *." The claimed loss of recapped tires was first discovered upon the taking of an inventory. Later, an employee who had been convicted testified on behalf of plaintiff that he sold tires and that he had seen a truck loaded with tires leave the plaintiff's premises. The trial Court read the exceptive clause in the policy to mean that a loss first discovered on the taking of an inventory was excluded even though convincing extrinsic proof of the existence of the loss was thereafter produced. Thus, plaintiff's action was dismissed. The Court of Appeals in reversing for a new trial stated (page 310):

"In order to affirm the judgment below it is necessary to construe the exceptive clause of the policy to mean that no loss is covered if it is first discovered upon taking inventory, no matter what proof may be subsequently brought to light showing the loss to be clearly within the risks for which the policy was written.

* * * * * *

"Since the Court erroneously assumed that the plaintiff could not recover if its loss was first discovered by taking inventory, we cannot determine what weight should be given to its further findings of fact concerning the nature of the loss, i. e., whether it was of an undetermined or mysterious nature."

The problems presented to the Court in that case have little if any relevancy to those here.

Likewise, in Savannah Wholesale Co. v. Continental Casualty Co., 279 F.2d 706 (CA-5), the Court reversed a judgment based upon a directed verdict in favor of the insurer. In doing so, the Court held that evidence tending "to exclude every reasonable hypothesis other than that of employee dishonesty" and "some directly affirmative evidence to support the hypothesis of such dishonesty" raised an issue for determination by the fact-finder. The Court stated (page 708):

"If the jury chose to give full credit to the testimony of all of appellant's witnesses, it could quite reasonably conclude that the gross profit discrepancy was not due to any sort of clerical error or defect in the conduct of the business. The inference of theft would then be a permissible one."

Plaintiff tacitly concedes that the decision of this Court in Gaytime Frock Co. v. Liberty Mut. Ins. Co., 148 F.2d 694, is against its position but attempts, without success, to distinguish it on the factual situation. There, the provisions of the policy were more favorable to the insured than those here. The fidelity bond in suit provided coverage for losses, including inventory shortages, to the extent of $5,000, providing such losses were sustained through theft or any other dishonest act or acts of an employee or employees. The question for decision was whether the proof was sufficient to reasonably establish that the loss was in fact due to the fraud or dishonesty of an employee. The important point is that the case was tried by the Court without a jury and decided against the plaintiff on the ground of insufficiency of the proof. This Court affirmed and reiter-

**12**

ated the long established and oft repeated rule that we are bound by the findings of the trial judge unless found to be clearly erroneous. The rule is equally applicable here.

The judgment appealed from is

Affirmed.