Edward H. GREEN and Newman-Green, Inc., Plaintiffs-Appellants,

v.

AEROSOL RESEARCH COMPANY, Defendant-Appellee.

No. 15821.

United States Court of Appeals Seventh Circuit.

Feb. 17, 1967.

Cummings, Circuit Judge, dissented.

Joseph D. Block, Myron C. Cass, Chicago, Ill., for appellants, Aaron, Aaron, Schimberg & Hess, Silverman & Cass, Chicago, Ill., of counsel.

John J. Crown, Marshall W. Sutker, Eugene T. Noonan, Chicago, Ill., for appellee, Raymond, Mayer, Jenner & Block, Dressler, Goldsmith, Clement & Gordon, Chicago, Ill. of counsel.

Before KNOCH, KILEY and CUMMINGS, Circuit Judges.

KNOCH, Circuit Judge.

The plaintiffs, Edward H. Green and Newman-Green, Inc., brought suit charging infringement of United States Letters Patent #3,045,877. The defendant, Aerosol Research Company, set up in its answer an affirmative defense based on a prior agreement between the parties. After a separate trial on this affirmative defense alone, severed by stipulation of the parties, the District Court entered a decree sustaining that defense and dismissing the complaint, from which this appeal is taken.

Newman-Green, Inc. (hereinafter called "Newman-Green") and Aerosol Research Company (hereinafter called "Aerosol") were and are competitors. In 1956 Aerosol brought suit in the Circuit Court of Cook County, Illinois, against Newman-Green and others claiming ownership of an invention for which Edward H. Green had filed a patent application in December, 1955. This application matured into Letters Patent #2,777,735 issued January 15, 1957, hereinafter called "Green '735", of which Newman-Green was exclusive licensee.

Early in January, 1961, Aerosol brought suit in the United States District Court against Newman-Green and Edward H. Green asserting infringement of Aerosol's patents #2,587,040 and #2,913,154.

In its counterclaim, Newman-Green contended that '154 was invalid and that

Aerosol was infringing Green '735 of which Aerosol was asserting ownership and of which Aerosol was also charging invalidity.

Newman-Green was there contending that the Green '735 patent embraced the same device which is in issue in the case now before us, in which Newman-Green asserts that this same device constitutes infringement of '877.

The four patents all relate to a small opening in the stem portion of an aerosol valve. In Green '735 the small opening is characterized as a slot. In Green '877 in suit it is a slot partially filled with a short web. For purposes of this limited contract issue trial, Aerosol has stipulated that Green '877 is valid and infringed.

There were extensive negotiations for settlement of the controversies between the parties beginning in 1961, which resulted in a settlement agreement dated May 7, 1962. Aerosol released Newman-Green and Edward H. Green from claims of past infringement of patents '040 and '154 with Newman-Green agreeing that '154 was valid. Newman-Green and Edward H. Green released Aerosol from claims of past infringement of Green '735, which Aerosol agreed was valid and owned by Edward H. Green. Newman-Green paid $25,000 to Aerosol. The agreement also provided for certain specific rights granted for future use by the parties.

Paragraph 12 of the settlement agreement reads:

12. GREEN and NEWMAN-GREEN hereby grant to AEROSOL RESEARCH the following license, covenant not to sue, and license, respectively, *under Green '735*:

a. With respect to the representative structure illustrated in the drawing Exhibit II attached hereto, which is a structure characterized by the clear through slot from its top to its bottom, and which is identified as AEROSOL RESEARCH valve AR–74 (without the so-called groove modification), the parties agree that the structure of Exhibit II comes within the scope of Green '735, and NEWMAN-GREEN and GREEN hereby grant to AEROSOL RESEARCH a non-exclusive license to manufacture, use and sell the structures of Exhibit II throughout the United States and all its territories and possessions for the full term of the GREEN patent in accordance with provisions set forth in the Terms of Royalty Bearing License attached hereto, except that as to all such structures illustrated in the drawing Exhibit II manufactured and sold by AEROSOL RESEARCH for the period ending six months from the date of execution of this Agreement, said license shall be free of royalties.

b. With respect to the representative structure illustrated in the drawing Exhibit III attached hereto, GREEN and NEWMAN-GREEN covenant that they will not take any action or make any demands or assertions or claim any damages, costs, expenses or attorneys' fees against AEROSOL RESEARCH or GOLDBERG or their customers, licensees, agents or representatives for alleged infringement of *Green '735* based upon the manufacture, use or sale of the structure of said Exhibit III by AEROSOL RESEARCH or their customers, licensees, agents or representatives hereafter, providing that:

i. The entrance area to the slot or groove identified in the drawing Exhibit III as A, has such a relation to the cross sectional area of the slot or groove identified in the drawing Exhibit III attached hereto as B, such that B is never more than 115% of A; and providing further that:

ii. The vertical dimension of the web or gusset at the point identified in said drawing Exhibit III as D, is not shorter than $\frac{2}{1000}$ths of an inch below the topmost point at which the stem and valve cup engage. For identification of the meaning of the language of this provision, ref-

erence is had to claim 4 of Kuffer '154.

c. With respect to the representative structure illustrated in said drawing Exhibit III, in any case that the vertical dimension of the web or gusset is such that it is shorter than 2/1000ths of an inch below the topmost point at which the stem and valve cup engage, or in any case that the entrance area to the slot or groove identified in the drawing Exhibit III as A, has such a relation to the cross sectional area of the slot or groove identified in the drawing Exhibit III as B, such that B is more than 115% of A, then the parties agree that this structure comes within the scope of *Green '735* and for that purpose GREEN and NEWMAN-GREEN hereby grant to AEROSOL RESEARCH a non-exclusive license to manufacture, use and sell the structures identified in this paragraph (c) throughout the United States and all of its territories and possessions for the full term of *Green '735* in accordance with the provisions set forth in the Terms of Royalty Bearing License attached hereto. (Emphasis added per argument of Newman-Green)

By pre-trial stipulation the parties hereto agreed that Aerosol's accused devices are constructed in accordance with paragraph 12(b) above.

The agreement further provided:

13. Nothing herein shall be construed to grant to either of the parties, rights under any patents other than those specifically named herein, either U.S. or foreign, and then only to the specific extent mentioned, and nothing herein shall be construed to limit any of the parties hereto to pursue and assert any rights in foreign countries against the other parties or those deriving title or rights therefrom on the basis of foreign rights obtained and perfected. Likewise, with respect to the patents other than those specifically named herein, nothing herein shall limit or in any way derogate against any defense available to a party in a suit for patent infringement either in the United States or foreign countries, and in this regard, the parties shall be considered as strangers one to the other.

The appellants contend that despite the fact that the accused devices are the same as those charged previously to infringe Green '735 and despite the fact that these accused devices are constructed in accordance with paragraph 12(b), appellants have convenanted not to sue only with respect to Green '735 alone; that paragraph 13 makes it clear that no rights were granted under patents other than those specifically named. Green '877 is not specifically named.

While settlement negotiations were pending both the appellants and the appellee had patent applications on file respecting stem structures of aerosol valve spray tips. One of these matured into Green '877 on July 24, 1962. Neither party disclosed the existence of such pending applications. Counsel for Aerosol repeatedly attempted without success to ascertain whether the appellants had any such applications on file. The appellants declined to make such disclosure but never stated that no such applications were pending.

There was testimony by the then counsel for Aerosol that he believed the agreement expressly covered all it was intended to cover.

The appellants argue that the District Judge erroneously implied a license in favor of Aerosol under the subsequently issued patent Green '877 contrary to the specific terms of the agreement and thus extended additional rights to Aerosol at the expense of the appellants. The appellants also contend that the District Judge erroneously gave consideration to evidence of proposed interim changes made in the course of the settlement negotiations. In February, 1962, appellants' newly retained counsel suggested the following provision be included in the settlement agreement:

Green and Newman-Green hereby grant to Aerosol Research an irrevo-

cable non-exclusive, non-transferrable, royalty-free license to make, use and sell devices of the construction of Green '735 as exemplified, but not limited to the structures of Exhibits D and E attached hereto, such license being transferrable only with the sale of the entire business of Aerosol Research *and subject to any patents which may be acquired by Green and/or Newman-Green after the date of this agreement.* (emphasis added)

This provision was rejected. The defendant thus argues that the concept of ouster by after-acquired patent was intentionally excluded from the settlement agreement of May 7, 1962.

Notice of allowance of the Green '877 application is dated May 11, 1962. As indicated, it issued July 24, 1962. This action was filed August 24, 1962. The defendant makes a point of the fact that on May 7, 1962, it was making the accused device and that the plaintiffs knew the defendant intended to convert entirely to those devices in reliance upon the settlement agreement, and the defendant did subsequently make that change in its operations. The defendant also sees some significance in the fact that the plaintiffs' counsel personally conferred with the Patent Office Examiner on April 26, 1962, regarding the amendment to the pending application which was subsequently approved officially. At the settlement conference with the defendant's counsel on April 28, 1962, efforts were still being made to include provisions for the above-described limitation with respect to after-acquired patents, to which the defendant consistently refused to agree. The defendant thus contends that the plaintiffs are now seeking to read into paragraph 13 a limitation which was specifically rejected.

■ From our own study of the settlement agreement as a whole in the light of traditional rules of construction, it appears clear that the intention of the parties was to give the defendant an unencumbered right to continue making and selling the accused Aerosol devices. Buchanan v. Swift, 7 Cir. 1942. 130 F.2d 483, Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058 (1916). To accept the interpretation urged by the plaintiffs would render the agreement meaningless. We do not consider this agreement analogous to that involved in the case of Gillette Co. v. Travelers Indemnity Co., 7 Cir., 1966, 365 F.2d 7, on which the appellants rely. In that case this Court declined to rewrite an insurance contract which incorporated stringent, but clearly stated, limitations on the acceptable proofs of loss.

We agree with the District Court's interpretation of paragraph 13 as intended to exclude patented subject matter of substantially different nature and not devices already protected by the prior litigated patent Green '735.

■ Where any doubt does arise as to the sense or meaning of a contract, resort may properly be had to the circumstances surrounding its execution. Buchanan v. Swift, supra, 130 F.2d p. 485. We do not believe such resort was necessary here, but find no reversible error in the consideration given by the District Court to the prior suggested and rejected drafts of the settlement agreement.

The judgment of the District Court is affirmed.

Affirmed.

CUMMINGS, Circuit Judge (dissenting).

With regret, I find myself compelled to dissent. The opening clause of paragraph 12 of the 1962 settlement agreement conveyed rights only "under Green '735." Under paragraph 12(c), Newman-Green granted Aerosol a non-exclusive license under Green '735. Under paragraph 12(b), Newman-Green covenanted not to sue Aerosol "for alleged infringement of Green '735."

Paragraph 13, provided that "Nothing herein [in the settlement agreement] shall be construed to grant to either of the parties, rights under any patents other than those specifically named here-

in * * *." Since this plain, unambiguous language limits the pertinent rights to those granted under Green '735, the contract may not be extended to accord rights under subsequent Green '877.[1] Gillette Company v. Travelers Indemnity Company, 365 F.2d 7, 8–9 (7th Cir. 1966); In-Sink-Erator Manufacturing Co. v. Waste King Corp., 346 F.2d 248, 252 (7th Cir. 1965), certiorari denied, 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78; Buchanan v. Swift, 130 F.2d 483, 484–485 (7th Cir. 1942). This conclusion is bolstered by the license grant in paragraph 12(c) "for the full term of Green '735." That patent expires in 1974, whereas Green '877 will run until 1979.

Paragraph 1 of the settlement agreement acknowledges that neither Newman-Green nor Aerosol shall owe any obligations to each other under various agreements except those owed by virtue of the recognition of the rights of the respective parties in and to Green '735, Kuffer '154 (U.S. Patent No. 2,913,154) and Green '040 (U.S. Patent No. 2,587,-040), "which rights are hereinafter set forth." Paragraph 7 provides that Aerosol shall not have any rights or claims whatsoever in any patents whose application was filed after October 28, 1953; the application for Green '877 was filed in 1960. Both these provisions also show that the agreement was not intended to cover Green '877. If Aerosol expected protection under future Newman-Green patents, Aerosol counsel should have proposed a short phrase to give it rights under such patents.[2] This was never done, although both parties were represented throughout the lengthy settlement negotiations by experienced counsel. This Court should not rewrite the settlement agreement for Aerosol's benefit when the terms of that agreement unmistakably show that it was not intended to convey a license under a subsequently acquired patent. Its primary purpose

was to settle past disputes rather than to prevent future disputes.

In support of its position, the majority states that an interpretation limiting paragraph 12 to Green '735 "would render the agreement meaningless." To the contrary, Aerosol would still retain the following benefits under the settlement agreement:

1. Confirmation of Aerosol's ownership of Green '040 and Kuffer '154.

2. Newman-Green's agreement that Green '040 and Kuffer '154 are valid patents.

3. Royalty payments by Newman-Green under Kuffer '154 for the manufacture of certain aerosol valve structures.

4. A license and covenant not to sue granted to Aerosol under Green '735.

5. A release of all accrued claims of Newman-Green, including release of accrued claims for infringement of Green '735.

6. Newman-Green's payment of $25,-000 to Aerosol.

7. Settlement of state court and federal court suits (including counterclaims) then pending between the parties.

I agree with the majority that in view of the plain meaning of the contract, no resort is necessary to the circumstances surrounding its execution. In any event, such resort does not call for an interpretation of the settlement agreement different from what is commanded by its face. An early determination of the validity of Green '877 would be in the public interest. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. The proper disposition of this case would be to remand it, permitting a trial of the validity and infringement issues.

---

1. In patent '877, a reinforcing web is inserted in the upper end of the slot disclosed in '735 "to provide proper metering of the product to be dispensed" from the aerosol container.

2. As Newman-Green's counsel pointed out at the argument, the insertion of "or any other patent" at the end of the opening clause of paragraph 12 would have given Aerosol the protection it now demands.