**Edward H. GREEN and Newman-Green, Inc., Plaintiff-Appellant,**

**v.**

**VALVE CORPORATION OF AMERICA, Defendant-Appellee.**

**No. 17280.**

United States Court of Appeals, Seventh Circuit.

June 24, 1970.

Myron C. Cass, Ely Aaron, John S. O'Brien, Chicago, Ill., Silverman & Cass, Aaron, Aaron, Schimberg & Hess, Chicago, Ill., of counsel, for appellant.

Herman J. Gordon, Sheldon O. Collen, Marshall W. Sutker, Chicago, Ill., Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Dressler, Goldsmith, Clement & Gordon, Chicago, Ill., of counsel, for appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KNOCH, Senior Circuit Judge.

This appeal represents the latest stage in a series of law suits, the history of which is briefly indicated in Green v. Aerosol Research Co., 7 Cir., 1967, 374 F.2d 791. On the basis of this Court's decision in that case, the parties agreed to dismiss Counts I and II of the Com-

plaint of plaintiffs-appellants, Edward H. Green and Newman-Green, Inc., against Aerosol Research Co., for whom defendant-appellee, Valve Corporation of America, with which Aerosol Research had merged, was substituted.

Count III charged violation of the anti-trust laws, Title 15, U.S.C. §§ 1, 2, 15 and 26, and unfair competition. It is agreed that Edward H. Green, president of Newman-Green will be bound by the judgment in this action, but plaintiffs assert that Newman-Green is the only party plaintiff as to Count III and that Newman-Green is the real appellant here.

Extensive negotiations for settlement of the controversies between Newman-Green and Aerosol Research had resulted in an agreement dated May 7, 1962, between plaintiffs-appellants and Aerosol Research.

Although defendant had filed an answer and counter-claim to the entire complaint on March 12, 1965, defendant on November 16, 1966, filed a motion to dismiss or for summary judgment clearly asserting for the first time (although in its answer defendant had denied plaintiffs' standing to bring the action in Count III and had asserted that estoppel operated here) that Count III was settled and released by the agreement of May 7, 1962. After a pre-trial conference the cause was transferred to the Executive Committee of the District Court and reassigned to another District Judge. On May 19, 1967 at a pre-trial conference, a schedule was set for the filing of additional documents and memoranda on the issue of release. On July 16, 1968 the District Judge to whom the cause was reassigned granted defendant's motion for summary judgment and dismissed the cause. The District Judge allowed introduction of "newly discovered" evidence, but on consideration of it declined to alter his prior ruling and this appeal followed.

As plaintiffs state, the thrust of Count III is that Aerosol Research and its attorneys knew that the Newman-Green B–14 valve with the clear-through slot had been sold and publicly used in the United States at least one year prior to November 20, 1956, when Clarence O. Kuffer, an employee of Aerosol Research filed on its behalf a patent application for an aerosol valve assembly (AR–74) which plaintiffs characterize as virtually the Newman-Green valve B–14 plus some structural details of no patent consequence or moment. That application was assigned Serial No. 623,429. Plaintiffs describe it as originally containing claims one through eight specifically covering an aerosol dispenser valve with a clear-through slot or slit common to the Newman-Green B–14 and Aerosol Research's AR–74 valves, which read literally on the B–14 valve and, plaintiffs allege, claimed as invention the B–14 valve without limitation to the above mentioned added structural details. Later Aerosol filed patent applications in France, Germany, Great Britain, Italy and Spain based on and claiming priority of the November 20, 1956 filing date of No. 623,429.

It was stipulated that these foreign patent applications, with the exception of the German, issued with claims reading on the B–14 valve and plaintiffs contend that they could be asserted against sellers and purchasers of the B–14 valve. Defendant averred that the patents are construable by the courts of the issuing countries to cover validly patentable structures and subject matter therein disclosed.

It was also stipulated that the Newman-Green B–14 was sold and used publicly in the United States as early as February 1955, more than one year prior to the filing date of November 20, 1956, a fact known to Mr. Kuffer and Stanley Goldberg of Aerosol Research and to at least one of Aerosol Research's attorneys. However, defendant asserted that neither the attorney who actually drafted the application, nor the attorney under whose direction he worked, had

any cognizance of that public use and sale when the application was filed and that neither of the above named Aerosol Research employees had any knowledge of patent law, procedure or interpretation.

Plaintiffs assert that Aerosol Research alone and in conspiracy with others maintained and used invalid and fraudulently procured foreign patents in violation of ·the federal anti-trust laws and in unfair competition with plaintiffs, for which plaintiffs sought injunctive relief and money damages.

Defendant does not admit any fraud and asserts that the evidence does not support the plaintiffs' allegations. Defendant refers to the stipulation of facts wherein plaintiffs admit that the accused patent application No. 623,429 did contain patentable subject matter. Plaintiffs assert that they did not mean it was patentable to defendant. It was also stipulated that after considering the alleged publicly used device as prior art, the United States Patent Office had allowed some claims in the accused application. That application was subsequently forfeited in favor of a continuation-in-part application, Serial No. 840,655 which became Patent No. 3,074,601, the validity of which is not questioned. Plaintiffs consider that 3,074,601 is irrelevant to this cause as they state it contains subject matter different from that of the application No. 623,429 and from the foreign patents named in Count III. For the limited purpose of considering its release defense on its motion for summary judgment, defendant is willing for the sake of argument alone to assume fraud.

█  Plaintiffs take the position that when the District Court ruled on a motion for summary judgment on the release issue, there was no motion for summary judgment pending within the intendment of the parties. They base this view on the attendant circumstances. By an oral motion on November 21, 1966, for example, after the mo-

tion to dismiss of November 16, 1966, and in a supporting memorandum filed the same day, defendant urged separation of the issue of release for trial, over plaintiffs' objection which sought trial of the case in its entirety. The supporting memorandum, however, filed November 21, 1966, is titled "In Support of Judgment for Defendant on the Issue of Release," and does not call precisely for "trial" but for separation of the issue. In a pre-trial document submission of February 10, 1967, defendant listed the release issue as first in the "Order of Issues for Trial," and in subsequent briefs urged separate trial, thus, say plaintiffs, tacitly admitting that there was a genuine dispute as to material fact. On the other hand, defendant in its brief and memorandum also asked for separate and initial "ruling" on the issue. We do not believe that there was any tacit acceptance of a need for full trial of any disputed facts. Most of the facts here are stipulated. The issues to which plaintiffs refer revolve around the intent of the settlement agreement, but plaintiffs as well as defendant consider the terms of the agreement to be plain and clear despite their opposing views of what the agreement did provide. Plaintiffs are convinced that they are entitled to an order denying the defense of release and directing that the trial proceed. However, failing such an order, they contend that there exists a genuine issue of material fact representing the intent of the parties concerning the scope of the release and that plaintiffs are entitled to a trial to resolve that issue. We do not believe that the District Judge erred in finding no genuine issue of material fact. We also find no error in utilizing the summary judgment procedure for interpreting this contract. See Brekken v. Reader's Digest Special Products, Inc., 7 Cir., 1965, 353 F.2d 505; Repsold v. New York Life Ins. Co., 7 Cir., 1954, 216 F.2d 479.

By its own terms the settlement agreement of May 7, 1962, purported to compose all the differences between the

parties. Among the actions of which it clearly disposed was District Court Case No. 61 C 44, Aerosol Research Company v. Newman-Green, Inc. and Edward H. Green, filed in the Northern District of Illinois, Eastern Division.

It is stipulated by the parties that the plaintiffs' counter-claim in that case asserted, as in Count III, that defendant filed the 1956 United States patent application knowing that the "invention" had been manufactured and sold by plaintiff Newman-Green and had been in public use more than one year, causing the purported inventor to make a false oath to perpetrate a fraud on the United States Patent Office and upon patent offices in foreign countries. Plaintiffs argue that the fraud claim of Count III was not pleaded in the counterclaim in No. 61 C 44 which they assert merely constituted a recital of facts to substantiate their claim of validity and infringement of the Green '735 patent which forms no part of Count III, the actual damage of the fraud claim having largely occurred later. We do not find this argument persuasive, as indicated below.

■ Defendant relies on Paragraph 15 of the May 7, 1962, agreement, to which Paragraph 16 is the mutual counterpart, which reads:

15. NEWMAN–GREEN, GREEN and JANE A. GREEN *hereby release and forever discharge AEROSOL RE-SEARCH*, its officers, directors and stockholders, and GOLDBERG of and *from and against any and all manner of actions, cause or causes of action*, suits, debts, accounts, promises, warranties, damages, *claims*, demands or agreements whatsoever, compensation and payments of any kind or matters whatsoever at law or in equity accruing prior to the date of this Agreement, *which* the said GREEN, *NEWMAN–GREEN* and JANE A. GREEN, the heirs, executors, administrators, and assigns of GREEN and

JANE A. GREEN, and the successors and assigns of NEWMAN–GREEN *have had, now have, or may or can have against AEROSOL RESEARCH* its officers, directors and stockholders, and its successors and assigns, or against GOLDBERG, his heirs, executors, administrators, and assigns, provided, however, that nothing contained in this paragraph shall release AEROSOL RESEARCH, its officers, directors and stockholders and its successors and assigns, and/or GOLDBERG, his heirs, executors, administrators and assigns, from any of their obligations under the terms of this Agreement.

Defendant points out that nowhere is the fraud or antitrust fraud claim of Count III, or any domestic claim in the United States based on the alleged fraud, reserved, and that plaintiffs' claim arises from their allegations that the foreign patents (four of which issued prior to the May 7, 1962, agreement) were misused to their damage. Defendant also points to the discovery testimony in connection with Case No. 61 C 44, as further evidencing plaintiffs' awareness prior to the May 7, 1962, agreement of the facts on which Count III is founded. Prior to that agreement, plaintiffs already believed themselves damaged by the defendant's foreign patents and took discovery respecting that aspect of their case. The record contains correspondence clearly showing plaintiffs' knowledge of damage attendant on defendant's notices of patent infringement of which plaintiffs complained in their letters.

Paragraph 17 of the agreement underlines the generality of the mutual general releases of the preceding paragraphs 15 and 16.

Plaintiffs rely on the limitations of paragraph 13 to support their contention that the parties intentionally and expressly excluded from the operation of the agreement any controversy involving

the subject foreign patents. Paragraph 13 states:

13. Nothing herein shall be construed to grant to either of the parties, rights under any patents other than those specifically named herein, either U.S. or foreign, and then only to the specific extent mentioned, and nothing herein shall be construed to limit any of the parties hereto to pursue and assert any rights in foreign countries against the other parties or those deriving title or rights therefrom on the basis of foreign rights obtained and perfected. Likewise, with respect to the patents other than those specifically named herein, nothing herein shall limit or in any way derogate against any defense available to a party in a suit for patent infringement either in the United States or foreign countries, and in this regard, the parties shall be considered as strangers one to the other.

Plaintiffs also argue that the reservation of any defense available in a suit for patent infringement permits plaintiffs to assert such defenses in the posture of either plaintiff or defendant. We cannot agree that this wording permits plaintiffs to bring an anti-trust action.

The specific exclusion clearly refers to pursuit and assertion of rights *in* foreign countries *on the basis of foreign rights* obtained and perfected. The exhibits in the record show that this wording was arrived at after several differing prior drafts.

Plaintiffs urge that testimony and affidavit of I. Irving Silverman, their counsel who negotiated the May 7, 1962, agreement, uncontroverted by counter-affidavits from defendant, showed that the parties did not intend to dispose of the subject foreign patents controversy. The testimony to which plaintiffs refer deals with "foreign controversy" listing England, France, Italy, Germany and possibly Spain and Switzerland as the countries in which the parties were in-volved in controversy. Mr. Silverman testified that the agreement reached on May 7, 1962, did nothing to settle the controversies in which Newman-Green and Aerosol Research were involved *in any foreign country*.

Similarly we note in the deposition of Stanley J. Goldberg, a signatory to the May 7, 1962, agreement, statements, to which plaintiffs refer, that the object was "ending of all litigation domestically" and "foreign patents were not involved in that settlement" show no inconsistency with the interpretation of Paragraph 13 for which the defendant here contends and with which we agree.

The plaintiffs protest that the District Court's interpretation of the release provisions is much broader in effect than the defendant now suggests, and that it will more seriously hamper plaintiffs in any foreign actions against the defendant or the defendant's assignees than ever intended by any of the parties to the agreement. We do not see it that way.

The District Judge in his Memorandum and Order on the defendant's motion for summary judgment did say that the releases included foreign claims then existing, especially if based on an essentially domestic issue, i. e. the fraudulent nature of a United States patent application. He found (and we agree) that beyond question the release provisions covered the cause of action set out in Count III and that this cause of action was not reserved by Paragraph 13 of the agreement.

We have considered with care all the other arguments advanced by the plaintiffs and have studied the authorities to which our attention has been drawn. We deem it unnecessary to comment on these. We find no error in the District Court's interpretation of this contract and we conclude that the judgment of the District Court should be affirmed.

Affirmed.