## WESTMORELAND ASBESTOS CO., Inc., et al. v. JOHNS–MANVILLE CORPORATION et al.

District Court, S. D. New York.

Jan. 10, 1941.

118

See, also, 32 F.Supp. 731; 1 F.R.D. 249.

Weissberger & Leichter, of New York City (M. M. Leichter and John L. Ketcham, both of New York City, of counsel), for plaintiffs.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl, Russel S. Coutant, A. S. Edmonds, and Francis W. Phillips, all of New York City, of counsel), for defendants.

KNOX, District Judge.

Defendants have moved for summary judgment dismissing the complaint insofar as it purports to state a claim for relief in favor of Westmoreland Asbestos Company, Inc., and Home Insulation Company, Inc.

The action, by way of a consolidated complaint, seeks treble damages under the Anti-Trust laws, 15 U.S.C.A. § 1 et seq., it being alleged that defendants conspired to obtain a monopoly of the business in which plaintiffs were engaged.

One of the defenses pleaded in the answers is that the claims of the aforementioned plaintiffs were discharged by a general release which they executed on or about August 27, 1934. That instrument ran in favor of all the defendants, except John A. Roebling's Sons & Company, but that corporation contends that it is within its protection, inasmuch as the same had to do with the acts of joint tort-feasors. Plaintiffs say that their affidavits, in opposition to motion, raise a triable issue as to the validity of the purported release, and claim that the release was obtained in order to consummate defendants' monopolistic purposes, and further, that the document is vitiated by fraud, practised in the inducement thereof.

William G. Kuehn, formerly a plaintiff herein, has been and now is the president and sole stockholder of each of the four corporations now prosecuting this suit. On or about July 1, 1933, Hiram E. Manville, one of the defendants, negotiated with Kuehn relative to the possible purchase of the plaintiff companies by Johns-Manville Corporation. Kuehn did not favor the proposal, and thereupon Johns-Manville Corporation, acting through its then vice-president, declared, in effect, that if the sale be not made, his company would put Kuehn and his corporations out of business. The complaint charges that following such threat, Johns-Manville, on October 16, 1933, instituted bankruptcy proceedings against Westmoreland Asbestos Company and Home Insulation Company, and that this was done pursuant to a plan to ruin the interstate business of the alleged bankrupts, and to monopolize their trade.

The pleading then proceeds to aver that as a result of subsequent litigation, the involuntary bankruptcy proceedings were dismissed; that at numerous times and various places, defendants slandered the professional ability and reputation of plaintiffs' cor-

porations, and maliciously injured their credit; that defendants entered upon a campaign of enticing away plaintiff-corporations' valuable and trusted employees; that corporations, similar in name and business to those of plaintiffs, were set up with the intent to deceive and confuse the public and divert business from plaintiffs; that plaintiffs, at the instance of defendants, were unjustly blacklisted by important supply houses, and that the trade generally, as a consequence of financial pressure applied by defendants and through their disparagement, was antagonistic to plaintiffs; that subsequently, and for protective purposes, the corporate names of plaintiffs were changed to Westchester Asbestos Company and Rock Wool Insulation Company, respectively.

Prior to August, 1934, various disputes existed between plaintiffs and defendants. The plaintiffs, it is said, were then considering a suit against defendants under the anti-trust laws for damages sustained by them due to defendants' wrongful acts in an effort to monopolize the industry. However, in June, 1934, Kuehn and Lewis H. Brown, president of Johns-Manville Corporation, discussed settlement of the controversies between the parties and Brown suggested the exchange of mutual releases. Kuehn hesitated in acquiescing in this proposal, but at a later conference, Brown represented that Johns-Manville desired to end hostilities; that plaintiff corporation would no longer be blacklisted by the Manufacturer's Magnesia Association, the Mineral Wool Association, and others; that Johns-Manville would cease interfering with plaintiffs' employees; that it would stop underselling and slandering plaintiffs; and that it would change the names of its subsidiaries and affiliates that confused and misled the public. Relying upon these representations, Kuehn, on behalf of plaintiff corporations, agreed to and did exchange the releases requested by Johns-Manville Corporation. It, in turn, released plaintiffs of an alleged indebtedness of over $100,000.

Plaintiffs now claim that the foregoing promises and representations were false and fraudulent, and were not intended to be kept and performed, and that the oppressions and wrongdoing of Johns-Manville Corporation, instead of ceasing, continued unabated.

It is also said that the release was obtained by defendants, with the intention to utilize it as an additional means of reaching the monopolistic end it had in mind.

It appears, both from the complaint and affidavits, in opposition to the motion, that following the release, the alleged conspiracy continued in full strength, and was exerted against each of the plaintiffs.

Defendants, nevertheless, ask for the complete dismissal of plaintiffs' action upon the theory that, since but one conspiracy is alleged, the release operates to discharge the defendants from liability for wrongful acts, both before and after the date of the instrument. With this contention, I am not in accord. For certain purposes, it is true, a conspiracy is treated as a single tort. Nevertheless, the gist of an action under the anti-trust laws is the injury sustained by a plaintiff as a result of a conspiracy denounced by the statutes. The moment that a violation of these laws inflicts damage upon a person, he is possessed of a cause of action to redress the wrong he has suffered. Foster & Kleiser Company v. Special Site Sign Company, 9 Cir., 85 F.2d 742. Compare United States v. Borden Company, 308 U.S. 188, 202, 60 S.Ct. 182, 84 L.Ed. 181.

If plaintiffs' release is to operate as a complete defense, it must be shown that the intention was to cover defendants' subsequent misconduct, if such it was. Perusal of the instrument negatives any such view. The release spoke as of the day of its date, and contemplation of future wrongs was not within the minds of the parties. Indeed, if the instrument purported to absolve defendants from liability for future violation of the anti-trust statutes, I should hold it void as against public policy. Compare Raytheon Manufacturing Company v. Radio Corporation of America, 1 Cir., 76 F.2d 943, 949. In my opinion, defendant's contention that the release is a bar as to causes of action subsequently arising, cannot be sustained.

Whether the release constitutes a valid defense against damages suffered by plaintiffs prior to its execution and delivery is a different question. If, in fact, it was obtained by fraud, deceit and trickery, its own weight will bear it down and plaintiffs will be able to recover for all injuries that defendants inflicted upon them. Wagner v. National Life Insurance Company, 6 Cir., 90 F. 395; In re Hunter-Rand Company, D.C., 241 F. 175, 179; Donaldson v. Farwell, 93 U.S. 631, 23 L.Ed. 993; Wright v. Barnard, 248 F. 756, 775; Kirchner v. New Home S. M. Co., 135 N.Y. 182, 189, 31 N.E.

120

1104; Raytheon Mfg. Co. v. Radio Corporation of America, 1 Cir., 76 F.2d 943, 949.

My consideration of the papers before me upon the instant motion leads me to believe that this action must stand for trial. Plaintiffs, I think, are entitled to an opportunity to examine both the parties and witnesses who can throw light upon the subject matter of the suit. Plaintiffs' case, principally, will have to be proved by the testimony of hostile persons, and by the inferences to be made from defendants' promises, as they are illuminated by the light of their later activities. The issues here tendered by plaintiffs ought not to be resolved upon an application for summary judgment.

As bearing upon plaintiffs' contention that the release is void and inoperative because it forms an integral part of, and was obtained with the intent to further the monopolistic conspiracy itself, the words of the Supreme Court in the Raytheon case, 296 U.S. 459, 56 S.Ct. 297, 299, 80 L.Ed. 327, are apropos:

"A release under seal is a good defense at law, unless its effect is overcome by new matter in avoidance. This will happen, for illustration, when it is so much a part of an illegal transaction as to be void in its inception. If it is subject to that taint, a court of law is competent to put it out of the way."

The motion for summary judgment is denied.