**MARKETING ASSISTANCE PLAN, INC., et al., Plaintiffs,**

v.

**ASSOCIATED MILK PRODUCERS, INC., Defendant.**

Civ. A. No. 71–H–841.

United States District Court, S. D. Texas, Houston Division.

Feb. 24, 1972.

Fulbright, Crooker & Jaworski, Thomas R. McDade, Houston, Tex., for plaintiffs.

Sewell, Junell & Riggs, Ben G. Sewell, Houston, Tex., for defendant.

## MEMORANDUM OPINION:

SEALS, District Judge.

The defendants in this antitrust action have filed a Motion For Summary Judgment and alternatively a Motion to Dismiss for failure to state a claim under the antitrust laws. The Plaintiffs

are a milk cooperative association which markets its members' milk in Texas, and two individual members of the association. The Defendant is a milk cooperative association which markets its members' milk in Texas and other states. The two associations are direct competitors. The Plaintiffs will be referred to collectively as MAP and the Defendant as AMPI.

MAP seeks damages from AMPI for certain alleged anti-competitive practices and an injunction prohibiting such practices. MAP's cause of action is predicated upon alleged violations of the "Sherman Act," 15 U.S.C. §§ 1–7, the "Clayton Act," 15 U.S.C. §§ 12–27, more particularly sections 2, 4, 7, 13(a), 14, 15, 18 and 26 of Title 15 United States Code, and of the Agricultural Fair Practices Act of 1967, 7 U.S.C. §§ 2301–2306. The complaint also alleges violations of the "Robinson-Patman Act," 15 U.S.C. § 13(a), and of the "Capper-Volstead Act," 7 U.S.C. § 292, and of the Agricultural Marketing Agreement Act, 7 U.S.C. §§ 602, 608c(5) (B) (ii), and 608c(18), and of the antitrust laws of Texas, Tex.Bus.Comm.Code Ann. §§ 15.01–15.03, V.T.C.A.

The Defendant's Motion For Summary Judgment is based upon a release obtained by its predecessor corporation (Milk Producers, Inc.) from MAP and several of its individual members, including one of these plaintiffs (Harlan Irvin), which by its terms bound all members of MAP. The release terminated the litigation in Civil Action No. 68–H–930, MAP, Inc., et al. v. South Texas Producers Assn., et al., and an order was entered upon the settlement dismissing the complaint with prejudice as to its refiling on October 28, 1969. AMPI contends that the release completely bars the instant suit.

Alternatively, AMPI moves that the action be dismissed for failure to state a claim under the antitrust laws: because milk cooperatives are exempt from those laws by reason of specific statutes; because AMPI is immune by reasons of its participation in a federal milk program; because the Capper-Volstead Act and the Agricultural Marketing Agreement Act do not provide a private remedy for violations and these plaintiffs have no standing to bring suit; and because the Agriculture Fair Practices Act applies to "handler" and not to "producers associations."

For purposes of the Defendant's motions, the well-pleaded allegations of the Plaintiffs' complaint must be taken as true. Our task is to determine whether, as a matter of law, AMPI is entitled to either a summary judgment in its favor or a dismissal of the action. The Motion For Summary Judgment and the issue of the release will be dealt with first.

### I.

The release is entitled "Full and Complete General Mutual Release Agreement," and was executed for the express purpose of "settling and terminating the dispute between . . . . [the parties] . . . . and to effect and execute mutual releases regarding any and all matters and controversies between them except those expressly excluded herefrom. . . . ." Besides the original named plaintiffs and defendants, the release also included other MAP members as signators to the extent of persons listed in an appendix who had consented to becoming additional plaintiffs and authorized a settlement. Other MAP members who were neither plaintiffs nor signators were not parties to the release. The various plaintiffs then released the various defendants (including AMPI's predecessor-in-interest):

". . . from any and all claims, demands, rights, or causes of action, known or unknown, asserted or not asserted, including but not limited to all claims, demands, rights, or causes of action which were or could have been asserted in said action or growing out of or in any way connected with the matters and issues therein involved . . . ."

The Supreme Court's decision in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L. Ed.2d 77 (1971), involved the application of a release in an antitrust action. The Supreme Court held that as a matter of *federal law* the release of several joint tortfeasors did not operate to release another joint tortfeasor who was not a party to the suit. Instead, the Court ruled "that a party releases only those other parties whom he *intends* to release." 91 S.Ct. at 810, 28 L.Ed.2d at 97 (emphasis added). The Court's ruling indicates that in the area of federal antitrust law mechanical, common law rules governing releases will be discarded in favor of the intent evidenced by the release itself.

 Using this standard two conclusions are immediately apparent. As the successor-in-interest of Milk Producers, Inc., AMPI is entitled to benefit from the release. *See*, Green v. Valve Corp. of America, 428 F.2d 342 (7th Cir. 1970). The release bars MAP, the other plaintiffs, and any producers who might later join MAP, from subsequently prosecuting that cause of action, or any cause of action, which arose out of the facts giving rise to the dispute in 68–H–930. A release of claims in suit is a complete bar to assertion of the same claims in a later suit. DeHart v. Richfield Oil Corp., 395 F.2d 345 (9th Cir. 1968); W. J. Perryman & Co. v. Penn Mutual Fire Ins. Co., 324 F.2d 791 (5th Cir. 1963). Farmers joining MAP after the release have no cause of action for pre-release activities and damages done to MAP, because any such cause of action belonged to the corporation and was already settled when they joined.

The release bars suits for activities engaged-in and damages consummated before the release. Damages arising from pre-release activity, but which were not consummated until after the release, are also included within the ambit of the release since the plaintiffs had a cause of action for all provable damages that would flow in the future from the defendant's conduct. Zenith Radio

Corp., *supra,* 91 S.Ct. 795, 28 L.Ed.2d at 92. No one would reasonably expect the consequences of pre-release conduct to cease as of the day of the release, and such damages must certainly have been contemplated by the parties. Indeed, the plaintiffs sought to enjoin the continuation of the alleged monopolistic activities for which they sought damages under the antitrust laws. The release of all claims, demands, rights, or causes of action arising out of the subject matter involved in the first suit, except those expressly excluded, included the compromise of the then recoverable post-release damages for the pre-release conduct of the defendants. The release does not bar recovery here of post-release damages which were too speculative to be recovered at the time of the release, for no cause of action had accrued for such damages. *Id.*, 91 S.Ct. 795, 28 L.Ed.2d at 92–93.

The release does not bar the assertion of post-release wrongs done to MAP and its members by the defendants in the earlier action or by their successor, AMPI. By its terms, the release covered only claims disputed and recoverable in that cause of action. It did not and could not settle disputes which had not yet arisen or serve as a license to engage in unlawful monopoly activities against the releasors. Such an absolution would violate public policy. Westmoreland Asbestos Co. v. Johns-Manville Corp., 39 F.Supp. 117, 119 (S.D.N.Y. 1941) aff'd on other grounds, 136 F.2d 844 (2d Cir. 1943); Fox Midwest Theatres, Inc. v. Means, 221 F.2d 173, 179–180 (8th Cir. 1955); Gaines v. Carrollton Tobacco Bd. of Trade, 386 F.2d 757, 759 (6th Cir. 1967).

 To summarize, the Court is of the opinion that the release executed in Civil Action 68–H–930 bars the assertion by MAP, other named plaintiffs, other signators and new members, of claims for pre-release damages, and of claims for post-release damages which were the consequences of pre-release activities which could have been recovered in that civil action. The release does not bar

post-release consequential damages which were too speculative to be recoverable in the earlier action. The release does not bar the individual claims of members of MAP at the time of the release who were neither named plaintiffs nor signators to the release. See, Anderson Furniture Co. v. Roden, 255 S. W.2d 345 (Tex.Civ.App.1952, writ ref. n. r. e.) The release does not bar the assertion by any of the parties in these categories of any post-release causes of actions for damages caused by renewed monopolistic activities by the defendants in either the first action or this action.

The motion for summary judgment will therefore be denied in part and granted in part.

## II.

The defendant has also filed a motion to dismiss this action for failure to state a claim under the antitrust laws of the United States. AMPI's proposition has four general grounds: (1) statutory exemption of milk cooperatives from antitrust laws; (2) immunity stemming from participation in a marketing plan under a federal milk order; (3) the non existence of a private remedy under the Capper-Volstead Act and the Agricultural Marketing Agreement Act deprives the plaintiffs of standing; (4) the inapplicability of the Agriculture Fair Practices Act to associations of milk producers.

■ AMPI's first contention in support of its motion to dismiss has been considered and rejected by the Supreme Court in an opinion by the late Justice Black. In Maryland and Virginia Milk Prod. Asso. v. United States, 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960) the Court held that neither section 1 of the Capper-Volstead Act, 7 U.S.C. § 291, which authorizes persons engaged in the production of agricultural products to act together in associations, nor section 6 of the Clayton Act, 15 U.S.C. § 17, which provides that the antitrust laws shall not be construed to prevent the existence and lawful operation of agricultural cooperatives, completely exempt

such cooperative associations from the Sherman Act, 15 U.S.C. § 1. The purpose of these sections is to make it clear that such combinations are not illegal *per se* and to give farmers the opportunity to compete as entities in the same fashion as business corporations. 362 U.S. 463–467, 80 S.Ct. 847, 4 L.Ed.2d 880. These sections do not license milk producers associations to engage in predatory commercial activities as alleged here. Id. at 465–466 and 467–468, 80 S.Ct. 847, 4 L.Ed.2d 880. The *Maryland and Virginia* decision was applied in this circuit in North Texas Producers Asso. v. Metzger Dairies, Inc., 348 F.2d 189 (5th Cir. 1965) and the law is quite clear that milk producers associations are subject to the strictures of the Sherman Act.

■■ The defendant's second argument that it is immunized from the Sherman Act because it had qualified under a federal milk order is also rejected. Private action to establish a monopoly position through economic coercion, although taken within the framework of governmental regulation, is subject to antitrust restraints. Thus, where a party provides misleading information to a state regulatory agency, the fact that it was subject to state regulation will not immunize it from federal antitrust laws. Woods Exploration & Producing Co., Inc. v. Aluminum Co. of America, 438 F.2d 1286 (5th Cir. 1971). Nor are business enterprises entitled to abuse regulatory schemes through the persistent filing of complaints and appeals to harass competitors and to keep them from securing operating permits. This type of activity within a regulatory framework is subject to antitrust scrutiny. California Motor Transport Co., et al. v. Trucking Unlimited, et al., 404 U. S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Therefore, activities under the cover of a federal milk order designed to achieve a monopoly position as alleged here can violate the antitrust laws. "If the end result is unlawful, it matters not that the means used in violation may be lawful. *Id.* 92 S.Ct. at 614. *See also,*

**1024**

South-East Coal Co. v. Consolidation Coal Co., 434 F.2d 767, 782 (6th Cir. 1970) to the effect that a valid labor contract can still expose the parties to antitrust liability if they intended to use it to drive competitors out of business.

██ The *California Motor* decision also disposes of the defendant's peripheral argument that its actions are protected by the First Amendment as an attempt to influence governmental action. This doctrine was designed to protect private attempts to secure legislation and law enforcement. *See*, United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) and Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). In *California Motor* the defendants were alleged to have used the existing regulatory processes to bar their competitors from meaningful access to the same processes and to have usurped the governmental decision-making process. Here, it is not alleged that the defendant has attempted to influence legislation or sought its enforcement, rather it is alleged that the defendant has engaged in commercial practices, e. g. "loading the pool," which have manipulated the regulatory scheme and resulted in the creation of a virtual monopoly. If these allegations of predatory and manipulative practices are proved, a violation of the antitrust laws has been demonstrated.

██ The defendant's third contention is that neither the Capper-Volstead Act nor the Agricultural Marketing Assistance Act create a private cause of action for violations of those statutes and that the plaintiffs therefore lack standing. The plaintiffs contend that they have an implied right to act as private attorneys general in the same manner as private litigants in the field of securities regulation. There is no statutory or case authority for either proposition, but this does not mean that the plaintiffs are precluded from offering violations of these acts as proof of violations of the antitrust laws. The fact that the Secretary of Agriculture is empowered to issue cease-and-desist orders under 7 U.S.C. § 292 whenever he finds that a cooperative has so monopolized trade as to "unduly enhance" the price of agricultural commodity does not preclude Sherman Act prosecutions for the same acts. Maryland and Virginia Prod. Asso. v. United States, 362 U.S. at 463, 80 S.Ct. 847, 4 L.Ed.2d 880. If a violation of Capper-Volstead or the AMAA is proven, that is the time to consider whether a private person is entitled to a recovery for consequential damages.

██ AMPI's fourth ground for its motion to dismiss is that as a producers association it is not a "handler" within the meaning of the Agricultural Fair Practices Act, 7 U.S.C. §§ 2301–2305. This ignores the fact that a "handler" is "any person" *Id.* § 2302(a) and that "person" is further defined as including associations, *Id.* § 2302(d). Furthermore, the plaintiff alleges that the defendant engages in activities which are included in the activities defined as those of a "handler," e. g. " . . . acquiring agricultural products from producers or associations of producers for processing or sale." 7 U.S.C. § 2302(a) (1).

██ The Court is also of the opinion that the claims under the Texas Antitrust Laws are within the pendant jurisdiction of the Court.

The Motion to Dismiss for failure to state a claim under the antitrust laws will therefore be denied.