In the **MIDWEST MILK MONOPOLIZA-TION LITIGATION.**

**MARKETING ASSISTANCE PLAN, INC., et al., Plaintiffs,**

v.

**ASSOCIATED MILK PRODUCERS, INC., Defendant.**

**Dane O. PETTY, d/b/a Petty Dairy, et al., Plaintiffs,**

v.

**ASSOCIATED MILK PRODUCERS, INC., et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**ASSOCIATED MILK PRODUCERS, INC., Defendant.**

**JPML Docket No. 83, and Nos. 73 CV 72-W-1, 73 CV 75-W-1, 74 CV 80-W-1.**

United States District Court, W. D. Missouri, W. D.

June 11, 1974.

See also, D.C., 379 F.Supp. 989.

Rebecca Schneiderman, Antitrust Div., Dept. of Justice, Midwest Section, Chicago, Ill., for the government.

Thomas R. McDade, Houston, Tex., for Marketing Assistance.

Gary R. Gurwitz, McAllen, Tex., for Petty Dairy.

Sidney Harris, Washington, D. C., for AMPI.

## MEMORANDUM AND ORDER DENYING AMPI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JOHN W. OLIVER, District Judge.

### I.

On March 4, 1974, AMPI filed its motion for partial summary judgment in regard to the portion of the claims asserted both by the Texas claimants and the government, as those claims relate to any alleged "loading" of the pool in any

federal market order. The grounds of that motion were stated in AMPI's memorandum of points and authorities filed the same day. AMPI also filed that day a statement of undisputed facts which AMPI contends are without substantial controversy.

AMPI's motion and all subsequent filings have been made pursuant to directions made at the pretrial conference in the above cases held February 14, 1974, as the time schedule provided therein was modified by later directions of the Court. Accordingly, on March 12, 1974, the Texas claimants filed their memorandum in opposition to AMPI's pending motion and their response to AMPI's statement of undisputed facts. The government filed its memorandum in opposition and its response to AMPI's statement of undisputed facts on March 26, 1974. With leave of court, the Secretary of Agriculture filed an *amicus curiae* response in opposition to AMPI's motion on April 15, 1974. AMPI filed a reply memorandum to all memoranda in opposition filed by all parties on May 2, 1974. Texas claimants filed a reply memorandum in further opposition to AMPI's pending motions on May 13, 1974. And AMPI filed its supplemental memorandum in support of its motion for partial summary judgment on June 6, 1974.

We have carefully considered all of the briefs and have concluded that there are three separate and alternative grounds which require that AMPI's motion be denied. We have also concluded that it would not be proper or appropriate that the questions presented by AMPI's motion be certified to the Court of Appeals pursuant to § 1292(b), Title 28, United States Code.

## II.

As a first and alternative ground, AMPI's motion must be denied because AMPI has not demonstrated that "there is no genuine issue as to any material fact" within the meaning of Rule 56(c) of the Rules of Civil Procedure. Rather than following the procedures directed at the February 14, 1974 pretrial conference, which contemplated, among other things, the execution of a stipulation of documentary evidence, AMPI filed what it captioned "Statement of Undisputed Facts." AMPI, obviously without consultation with opposing counsel, stated that it believed that everything it had stated in that document should be accepted "without substantial controversy" and suggested that "in the absence of written exceptions supported by discovery material, pleadings or other documents now on file, filed in or with plaintiff's responsive brief, these facts will be deemed to be uncontroverted." As the responses filed by the Texas claimants and the government establish, very little is undisputed except the fact that the various federal orders to which AMPI made reference had been published in the Federal Register.

We do not anticipate that there could be any legitimate genuine issue in regard to whether and when the various orders and the proceedings in connection with them were published in the Federal Register. We agree, of course, with Texas claimants' and the government's suggestion that those orders speak for themselves and are the best evidence under the circumstances. The remainder of AMPI's statement, however, may not properly be called a statement of facts because generally it is an outline of the legal arguments made in AMPI's memorandum of points and authorities, and is replete with conclusory statements of law and mixed questions of law and fact.

While AMPI does make a limited number of general references to what it concedes are "thousand of pages of deposition transcripts and hundreds of thousands of pages of documents produced in this case," it has not filed any affidavits nor has it made any systematic attempt either to define or to establish what it deems to be the controlling material facts which are relevant to its basic legal theories. Both the Texas claimants' and the government's responses to defendant AMPI's statement of undisputed facts establish that the parties plaintiffs

vigorously dispute and deny AMPI's claims that it in fact complied with the applicable provisions of the relevant federal orders and that AMPI in fact furnished the Department of Agriculture information required by it; indeed, the Texas claimants and the government state their belief that at least in some instances AMPI made false reports to the government.

We have considered AMPI's discussion of whether material factual issues were placed in dispute by the responses of opposing counsel, as stated on page 23 and following of their reply memorandum. We find and conclude that AMPI's argument in regard to the standards and purpose of Rule 56 is not tenable. The fact that there may be substantial evidence in support of what AMPI calls its "keystone statement" that AMPI's association of out-of-area milk "fully complied with the applicable provisions of the Order then in effect" cannot support the conclusion that there is no genuine issue as to that particular fact, assuming, of course, that such fact is a "material" fact, within the meaning of Rule 56.

■ ■ Neither Rule 56 nor the many cases construing that rule authorize this Court to deem any fact "to be uncontroverted" unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." AMPI's effort to proceed in a manner not authorized by Rule 56 is untenable. We find and conclude that AMPI has not presented a proper case for adjudication under Rule 56. We further find and conclude that it is not practicable for the Court to proceed pursuant to Rule 56(d) for the reason that AMPI has not appropriately attempted to establish any material facts other than the existence of the various federal orders. The conclusions stated in regard to the two other separate and alternative grounds for denying AMPI's pending motion establish that the entry of an order specifying that the issuance of the various federal orders appear without substantial controversy would be a useless and futile judicial act.

## III.

■ AMPI's reply memorandum implicitly recognizes that the underlying questions presented by its present motion for partial summary judgment were, in substance, earlier presented to Judge Seals and decided by him in his opinion reported in 338 F.Supp. 1019. AMPI recognizes that the "law of the case" doctrine involves the exercise of judicial discretion and contends that such discretion should be exercised against this Court's recognition of the rationale of Judge Seals' opinion. AMPI argues that Judge Seals was wrong and that this Court, in the exercise of its discretion, should give fresh consideration to AMPI's reiterated legal arguments to the end that a different result be reached.

As a second and alternative ground for denial of AMPI's pending motion, we believe that proper exercise of our discretion requires that we give full force and effect to the "law of the case" doctrine and that we apply the rationale of Judge Seals' earlier opinion to AMPI's pending motion for the reason that we are convinced that Judge Seals correctly stated and applied the controlling law.

Judge Seals' opinion in Marketing Assist. Plan, Inc. v. Associated Milk Pro. Inc., (S.D.Tex.1972) 338 F.Supp. 1019, 1023, shows that AMPI grounded its earlier motion to dismiss, among other things, upon the related theories of "(1) statutory exemption of milk cooperatives from antitrust laws;" and "(2) immunity stemming from participation in a marketing plan under a federal milk order." Although AMPI's arguments in support of its pending motion for partial summary judgment may be stated in a bit different language, we believe it is apparent that AMPI must have relied generally upon the same legal theories to support its earlier motion to dismiss.

We find and conclude therefore that Judge Seals' determination of AMPI's earlier motion to dismiss should, in the exercise of our discretion, be considered as the law of the case and, as such, establishes a second and alternative ground as to why AMPI's pending motion should be denied. In order, however, to avoid any legitimate contention that such action could be said to be an abuse of discretion, we shall specifically find and conclude in the next part of this opinion that as a matter of independent judgment, uninfluenced by Judge Seals' opinion, and as a third and independent ground, AMPI's legal arguments in support of its pending motion for partial summary judgment are untenable and contrary to controlling law.

### IV.

It is somewhat difficult to put one's finger on a precise statement of AMPI's principal legal theory other than to note its frequent and reiterated suggestion that the principles applied in Hughes Tool Co. v. Trans World Airlines, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), require that the pending motion be granted, AMPI argues in the first place that questions concerning "loading the pool" are "within the exclusive jurisdiction of the United States Department of Agriculture (USDA), and hence is immune from antitrust attack under the doctrine most recently explicated by the Supreme Court of the United States in Hughes Tool Co. v. Trans World Airlines, 409 U.S. 363, 93 S.Ct. 647, 34 L. Ed.2d 577 (1973) [AMPI Memorandum of Points and Authorities, p. 1]. AMPI, in support of an argument based upon a somewhat different rationale, contends that this Court "may not consider whether such activities are in violation of the antitrust laws, for such activities are immune from antitrust prosecution by virtue of the Agricultural Marketing Agreement Act of 1937" [Ibid, p. 1].

While AMPI's various briefs also have some discussion about "primary jurisdiction," AMPI frankly concedes that under its own theory, the Department of Agriculture has in fact acted and that "accordingly, this Court need not stay its proceedings pending administrative action under the doctrine of *primary* jurisdiction" [Ibid, p. 30]. AMPI, however, suggests in connection with what it calls its primary jurisdiction argument, that this Court should give "due deference" to the "administrative expertise of the Department of Agriculture" and that this Court "should not substitute its own judgment for that of the Department" [Ibid, pp. 30–31].

AMPI, however, does not press its "primary jurisdiction" argument in apparent recognition of the fact that proper application of that traditional doctrine determines only whether the court or the agency should make the initial decision of a question within the jurisdiction of both. See 3 Davis, Administrative Law Treatise, § 19.01 (1958), recently cited with approval and applied in Izaak Walton League of America v. St. Clair et al., 497 F.2d 849 (8th Cir. 1974). The main thrust of all of AMPI's arguments make it unnecessary to deal with the portion of AMPI's argument labeled "primary jurisdiction." For AMPI insists that it is the Secretary of Agriculture and only the Secretary of Agriculture who has jurisdiction over questions which relate to "loading the pool" charges and that no court has antitrust jurisdiction under the circumstances.

We are convinced that Congress did not intend to vest exclusive jurisdiction of the question of whether "loading the pool" violated the antitrust laws in the Department of Agriculture or the Secretary for determination or that the Congress, by its enactment of the Agricultural Marketing Agreement Act, intended AMPI to be immune from antitrust liability by reason of anything said in *Trans World Airlines* or elsewhere.

AMPI's explicit statement on page 4 of its supplemental reply memorandum that it is "not relying on the Capper-Volstead Act" does not narrow the question which AMPI actually presents because AMPI continues to insist, contrary to the holding of United States v. Bor-

den, 308 U.S. 188, 60 S.Ct. 182, 84 L.Ed. 181 (1938), that Section 608b of the AMAA should be construed to grant broad, as distinguished from limited, antitrust immunity. *Borden* concluded that "the Agricultural· Act itself expressly defines the extent to which its provisions make the antitrust laws inapplicable," noting that the definition of that extent was carefully stated in § 608b. Section 608b in its first portion vests power in the Secretary of Agriculture "to enter into marketing agreements with processors, producers, associations of producers, and others engaged in the handling of any agricultural commodity or product thereof . . . ." The limited antitrust immunity granted is stated in the final sentence of Section 608b which provides that "the making of any such agreement shall not be held to be in violation of any of the antitrust laws of the United States, and any such agreement shall be deemed to be lawful . . . ."

*Borden* must be read in light of the Supreme Court's express rejection of the particular legal conclusions stated by the district court which were quoted in the Supreme Court's opinion. The district court was reversed in *Borden* for accepting both the basic arguments which AMPI presents in this case. The Supreme Court expressly rejected the district court's conclusion (1) that "the power of regulation, supervision and control of the milk industry, in any given milk shed, is, by the Agricultural Marketing Agreement Act of 1937, vested exclusively in the Secretary of Agriculture," and its conclusion (2) that "the marketing of the agricultural products, including milk, covered by the Agricultural Marketing Agreement Act, is removed from the purview of the Sherman Act" [308 U.S. at 197, 60 S.Ct. at 188].

AMPI's construction of § 608b would require indulgence in the untenable basic assumption that, to use AMPI's words, " 'orders' are not distinguishable from 'agreements' " [AMPI supplemen-

tal reply memorandum, p. 4] and that, therefore, the final sentence of § 608b should be read to include any and all orders made pursuant to § 608c(9), which obviously are made without "the making" of any marketing agreement authorized by § 608b. Congress limited its grant of immunity to "the making" of a marketing agreement, as provided in § 608b. It did not choose to grant any broader immunity. As stated by Chief Justice Hughes in *Borden,* "if Congress had desired to grant any further immunity, Congress doubtless would have said so." We cannot accept AMPI's notion that § 608b should be read to include both "the making" of marketing agreements *and* the entrance of § 608c(9) orders based on procedures which do not include the making of any marketing agreement.

Some twenty years after *Borden* was decided, the unsuccessful defendant in Milk Producers Ass'n. v. United States, 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880, attempted to have the Supreme Court reconsider the conclusions stated in *Borden.* Defendants in *Milk Producers Ass'n.* contended that § 2 of the Capper-Volstead Act "intended to give the Secretary of Agriculture primary jurisdiction, and thereby exclude any prosecutions at all under the Sherman Act," [362 U.S. at 463]. After noting that "this Court unequivocally rejected the same contention in United States v. Borden Co., 308 U.S. 188, 206, 60 S.Ct. 182, 191, 84 L.Ed. 181," the Supreme Court unanimously concluded that "we adhere to the ruling and holding of the *Borden* opinion on this point." [362 U.S. at 463, 80 S.Ct. at 851].

Immunity was also sought in *Milk Producers Ass'n.* under § 7 of the Clayton Act which provides that nothing in that section shall apply "to transactions duly consummated pursuant to authority given by . . . the Secretary of Agriculture under any statutory provision vesting such power in such . . . Secretary . . . ." In rejecting that contention the Court made significant

reference to § 608b when it concluded that:

> The trouble with this contention is that there is no "statutory provision" that vests power in the Secretary of Agriculture to approve a transaction and thereby exempt a cooperative from the antitrust laws under the circumstances of this case. While there is a "statutory provision" vesting power in the Secretary of Agriculture to enter into agricultural marketing agreements which "shall be deemed to be lawful" and "not . . . be in violation of any of the antitrust laws of the United States," no such marketing agreement is involved here. [362 U.S. at 469–470].

No marketing agreements are involved in this case. For AMPI conceded that each of the federal orders entered contained an express finding that the parties had not in fact signed any marketing agreement. This case, like *Milk Producers Ass'n.*, simply does not involve a § 608b marketing agreement.

Carnation Co. v. Pacific Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966), involved a construction of the Shipping Act of 1916, which contained a provision, § 814, Title 46, United States Code, which vested power in the Maritime Board to approve "agreements" and which provided that agreements approved by the Board "shall be excepted from the provisions of sections 1–11 and 15 of Title 15, and amendments and Acts supplementary thereto." The general question presented in *Pacific Conference* was whether the Shipping Act "precludes the application of the antitrust laws to the shipping industry." It held that it did not. The Court concluded, in reliance upon the rationale of *Borden*, that the exemption created under § 814 must be read as it was written and that unless some "agreement" had in fact been approved, § 814 could not be said to be applicable. The Supreme Court stated:

> The creation of an antitrust exemption for rate-making activities which are lawful under the Shipping Act implies that unlawful rate-making activities are not exempt. This Court so interpreted an analogous provision of the Agricultural Marketing Agreement Act of 1937, 50 Stat. 246, 7 U.S.C. § 601 et seq. (1964 ed.), exempting marketing agreements approved by the Secretary of Agriculture from the antitrust laws. . . . United States v. Borden Co., 308 U.S. 188, 201, 60 S.Ct. 182, 189, 84 L.Ed. 181. [383 U.S. 216–217, 86 S.Ct. 784.]

*Pacific Conference* also concluded that "the structure of the [Shipping] Act and its legislative history [did not] demonstrate an unstated legislative purpose to free the shipping industry from the antitrust laws." [383 U.S. at 217, 86 S.Ct. at 784]

We have no way of knowing whether the authors of § 608b of the Agricultural Marketing Agreement Act were familiar with § 814 of the Shipping Act. We are convinced, however, that in its enactment of § 608b the Congress intended only to deal with "the making" of marketing agreements and that this Court cannot properly expand the limited exemption created by that section. If Congress had intended to grant immunity in regard to orders entered pursuant to § 608c(9), it would have so provided. This Court cannot properly create an immunity which the Congress refused to provide.

AMPI's insistent reliance upon *Trans World Airlines* is misplaced. Reference to United States v. R. C. A., 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354, will illustrate AMPI's difficulty. In *R.C.A.*, the district court dismissed the government's civil antitrust action because the Federal Communications Commission had in fact approved the exchange of television stations which the government sought to attack as a violation of the antitrust laws. In an effort to sustain their district court victory, defendant argued in the Supreme Court that "the regulatory scheme of the Communications Act has so displaced that of the Sherman Act that the FCC had primary jurisdiction to license the exchange

transaction, with the result that any attack for antitrust reasons on the exchange transaction must have been by direct review of the license grant." [358 U.S. at 338, 79 S.Ct. at 461]. The Supreme Court traced the development of what has been loosely referred to as "the primary jurisdiction doctrine" and pointed out that "the cases all involved, however, common carriers by rail and water," [358 U.S. at 348, 79 S.Ct. at 466]. It continued by significantly noting that:

> While the television industry is also a regulated industry, it is regulated in a very different way. That difference is controlling. [Ibid]

After an analysis of the Federal Communications Act, the Court concluded:

> Thus, there being no pervasive regulatory scheme, and no rate structures to throw out of balance, sporadic action by federal courts can work no mischief. The justification for primary jurisdiction accordingly disappears. [Ibid, at 350, 79 S.Ct. at 466]

One of the basic conclusions of *Borden* and *Milk Producers Ass'n.* was that the Agricultural Marketing Agreement Act could not be said to provide a "pervasive regulatory scheme" which could be considered as granting immunity for all antitrust violations which may have been committed by persons subject to the limited regulatory system provided in that Act. California v. Fed. Power Comm'n., 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), which held that the Federal Power Commission should not have authorized the merger of two companies while an antitrust action was pending before the courts, made reference to *Borden, Milk Producers Ass'n.*, and *R.C. A.*, as follows:

> Immunity from the antitrust laws is not lightly implied. The exemption of agricultural cooperatives from the antitrust laws granted by § 6 of the Clayton Act [, 15 U.S.C.A. § 17,] and § 1 and § 2 of the Capper-Volstead Act of 1922 [, 7 U.S.C.A. §§ 291, 292,] became relevant in Milk Producers Ass'n. v. United States, 362 U.S. 458

[80 S.Ct. 847, 4 L.Ed.2d 880]. . . . [W]e held that the District Court was authorized to direct the cooperative to dispose as a unit of the assets of an independent producer that had been acquired to stifle competition and restrain trade. We could not assume that Congress, having granted only a limited exemption from the antitrust laws, nonetheless granted an overall inclusive one. See United States v. Borden Co., 308 U.S. 188, 198–202 [60 S.Ct. 182, 84 L.Ed. 181]. . . . Here, as in United States v. R. C. A., 358 U.S. 334 [79 S.Ct. 457, 3 L.Ed.2d 354], . . . there is no "pervasive regulatory scheme" (Ibid.) including the antitrust laws that have been entrusted to the Commission. [369 U.S. at 485, 82 S.Ct. at 903]

■ *Borden* and *Milk Producers Ass'n* establish that the Agricultural Marketing Agreement Act did not establish a "pervasive regulatory scheme" which entrusted the administration of the antitrust laws to the Secretary of Agriculture. Cases which construe other statutes which do create "pervasive regulatory schemes" simply have nothing to do with this case.

Pan American World Airways v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963), is an example of the type of case which dealt with an entirely different type of statute than that involved in this case. That case concluded that Congress, by its enactment of the Civil Aeronautics Act of 1938 and the Federal Aviation Act of 1958, did create a pervasive regulatory scheme which deprived the courts of considerable jurisdiction over alleged antitrust violations. The Supreme Court, of course, recognized in *Pan American World Airways* that it was not overruling the many cases which concluded that in other areas Congress had not elected to create such a scheme. Footnote 9, for example, stated by way of illustration and explanation, that "United States v. Borden Co., 308 U.S. 188, 195–199, 60 S.Ct. 182, 188, 84 L.Ed. 181 [held] that neither the Agricultural Adjustment Act nor the Cap-

per-Volstead Act displaced the Sherman Act." *R.C.A.,* California v. Federal Power Commission, and *Milk Producers Ass'n.* are all cited in the same footnote.

It is therefore not necessary that we discuss either *Pan American World Airways* or *Trans World Airlines* in any detail because those cases relate to a different type of regulatory system that involved in this case. This Court, in light of *Borden* and its progeny, cannot properly conclude, that the Agricultural Marketing Agreement Act did provide a pervasive regulatory scheme which vested exclusive jurisdiction over the antitrust violations alleged in these cases in the Secretary of Agriculture.

*Trans World Airlines* stated no new law; indeed, Mr. Justice Douglas repeatedly stated that the result in *Trans World Airlines* was "required by §§ 408 and 414 of the Federal Aviation Act and by our prior decision in Pan American Airways v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963)." [409 U.S. at 366, 93 S.Ct. at 651]. See also 409 U.S. at 378, 379, 387 and 388, 93 S. Ct. 363.

Nor is extended discussion necessary in regard to Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). That case concluded that the Federal Power Act did not make a refusal to deal immune from the antitrust laws. The long and the short of it is that *Otter Tail Power Co.* simply added the Federal Power Act to the list of other regulatory acts, including the Agricultural Marketing Agreement Act, which the Supreme Court has concluded did not grant blanket antitrust immunity. See for other examples, Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) and United States v. Philadelphia Nt'l. Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).

### V.

At the February 14, 1974 pretrial conference (paragraph 7 on p. 20 of the transcript), we stated that this Court would give appropriate considera-tion to whether the questions presented by the pending motion for partial summary judgment should be certified to the Court of Appeals pursuant to § 1292(b), Title 28, United States Code. We discussed the standards applicable to § 1292(b) certifications in State of Missouri v. Stupp Bros. Bridge & Iron Co. (W.D.Mo.1966) 249 F.Supp. 111. Having given appropriate consideration to the matter, we have concluded that it would be neither proper nor appropriate to make any § 1292(b) certification in this case. We find and conclude that a "controlling question of law," within the meaning of § 1292(b), is not presented for the reason that AMPI's motion attacks but a limited number of the antitrust claims made by the Texas claimants and the government. We also find and conclude that there is no "substantial ground for difference of opinion," within the meaning of § 1292(b), for the reason that no court has sustained the rationale of AMPI's basic argument. In addition, we find and conclude that it is impossible to certify that "an immediate appeal from the order may materially advance the ultimate termination of the litigation," within the meaning of § 1292(b), for the reason that these cases will be set for trial in the very near future in accordance with the discussion of that question at numerous recent pretrial conferences. It is to be reasonably anticipated that these cases will be tried before it would be reasonably possible to obtain a final decision from the Court of Appeals under the circumstances.

### VI.

For the reasons stated, it is

Ordered (1) that AMPI's pending motion for partial summary judgment should be and the same is hereby denied. It is further

Ordered (2) that the Court has concluded that the questions presented by AMPI's pending motion should not, and will not, be certified to the Court of Appeals for the Eighth Circuit, pursuant to § 1292(b) of Title 28, United States Code.

## MEMORANDUM AND ORDER DENYING AMPI'S MOTION FOR RECONSIDERATION

On July 8, 1974 AMPI filed a motion for reconsideration of our memorandum and order of June 11, 1974, which denied AMPI's motion for partial summary judgment. We have carefully considered AMPI's motion and suggestions in support thereof, and the Texas claimants' and the government's separate suggestions in opposition. We have also carefully considered the *quasi amicus* letter written by counsel for Mid-America, dated July 12, 1974, and the letter of AMPI's counsel dated July 18, 1974, the letter of government counsel dated July 30, 1974, and the *amicus* letter of counsel for the Secretary dated August 12, 1974, which were prompted thereby. We find and conclude that AMPI's motion for reconsideration should be denied.

The only new argument made in connection with AMPI's motion for reconsideration is its belated contention that the decisions in Bramsen v. Hardin, (S. D.Fla.1972) 346 F.Supp. 934, affirmed sub nom. Chiglades Farm, Ltd. v. Butz (5th Cir. 1973) 485 F.2d 1125, somehow "totally vindicates AMPI's primary legal theory" and that the Court of Appeals decision "is binding precedent and must be applied as the substantive law" applicable to these cases.

AMPI's contention is untenable for several reasons. The questions presented in *Bramsen-Chiglades* were whether Marketing Order 967, 7 C.F.R. § 967.-130ff, was promulgated in excess of the authority granted the Secretary of Agriculture by 7 U.S.C. §§ 601–674; whether such Order was unconstitutional; and whether, on its face, such Order violated the antitrust laws.

The procedural posture of *Bramsen-Chiglades* was in sharp contrast with that presented in the cases at bar. Chief Judge Fulton stated in the first paragraph of his opinion in *Bramsen* that "plaintiffs admit that there is no genuine issue of material fact." As we made clear in our original opinion, there are many factual circumstances in substantial dispute in the pending cases. The new affidavits filed by AMPI cannot properly be considered as a resolution of the substantial factual controversies presented.

On their merits, *Bramsen-Chiglades* simply held that the Secretary's promulgation of Marketing Order 967 did not violate the antitrust laws and that such order, on its face, did not constitute such a violation. AMPI's motion for reconsideration, as their original argument in support of their motion for partial summary judgment, fails to recognize that neither the Texas claimants nor the government claim that the Secretary's promulgation of the Marketing Orders involved in the pending cases, or that such orders, standing alone, violated the antitrust laws. The thrust of the Texas claimants and the government is that AMPI impermissibly used and abused various provisions of the Milk Orders for the purpose of eliminating competitors in violation of the antitrust laws.

In our memorandum and order of June 11, 1974, we concluded that the questions presented by those claims are within the antitrust jurisdiction of this Court and are not within the exclusive jurisdiction of the Secretary of Agriculture. Nothing said in *Bramsen-Chiglades* nor in AMPI's suggestions in support of its motion warrants a reconsideration of that basic question. *Bramsen-Chiglades* is clearly distinguishable on its facts and therefore does not provide any controlling precedent so far as the questions presented in the above cases are concerned.

We do not believe it necessary to discuss particular language in our original opinion which Mid-America's counsel suggests may be subject to misinterpretation or misconstruction. Mid-America's counsel concede that they may have "over re-acted to some of the language" in that opinion. What is said in that opinion must be read in light of the specific questions presented. When so read, we believe it clear that, unlike *Bramsen-*

*Chiglades,* no one has ever contended that the Federal Milk Marketing Orders were either in excess of the Secretary of Agriculture's authority, that such Orders were unconstitutional on their face, or that such Orders in and of themselves constituted violations of the antitrust laws.

For the reasons stated, it is

Ordered that AMPI's motion for reconsideration should be and the same is hereby denied.