**Beatrice BAUM, Plaintiff,**

v.

**ROCKLAND COMMUNITY COLLEGE et al., Defendants.**

**No. 03 CIV.5987(CM)(GAY).**

United States District Court, S.D. New York.

Dec. 8, 2003.

Scott A. Korenbaum, New York, NY, for Plaintiff.

Charlotte G. Swift, Jason & Nesson, L.L.P., Chestnut Ridge, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS

MCMAHON, District Judge.

Defendants Rockland Community College and Dr. Thomas Voss move to dismiss plaintiff's complaint, in which she alleges, inter alia, that defendants retaliated against her for exercising her First Amendment rights by requiring her to submit to an intrusive physical examination as a condition for returning to work. The motion is granted in part and denied in part.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In the complaint, plaintiff alleges the following: she was a Clerk–Typist who had been employed by the defendant College for more than 15 years. On or about May 30, 2001, plaintiff filed a charge of discrimination with the EEOC, alleging that the College had discriminated against her on the basis of her age and a perceived disability (dementia), in violation of the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA). The parties agreed to mediate the charge and the EEOC brokered a settlement. The Settlement Agreement was executed on September 17, 2002. The College agreed to pay plaintiff $62,500 and to permit her to work until December 29, 2002, when she could retire pursuant to the College's retirement incentive program. The Agreement also provided that the College would not retaliate against plaintiff. Plaintiff agreed not to sue the College.

The Agreement contained the following provision concerning releases:

> 7. This document, together with a general release, prepared and signed by the parties, constitutes a final and complete statement of the entire agreement between the parties concerning EEOC Charge 160–A1–2032.

The Complaint alleges that the plaintiff executed a "satisfactory draft release" on or about September 18, 2002 and forwarded it to the EEOC. To her papers opposing the motion to dismiss, plaintiff appends a copy of that draft release, duly notarized. She asserts in an affidavit that the release was prepared by counsel for the College

and forwarded to the EEOC in June 2002, during the settlement negotiations; I assume this is the basis for the use of the word "satisfactory" in the complaint, although the affidavit is not technically permissible in opposition to a motion to dismiss pursuant to Rule 12(b)(6).

The Complaint alleges that, during the period of the settlement negotiations, plaintiff and family members met privately with defendant Voss, the Chairman of the Board of Trustees of the College, and the College's attorney from the Office of the Rockland County Attorney. Allegedly plaintiff made a number of comments at that meeting about matters of public concern, including supposedly life threatening health and safety conditions at the College's Haverstraw Extension Center and the role that religious discrimination played in the treatment that was the subject of her pending charge of discrimination. Plaintiff expressed the view that the College had promoted the Dean who allegedly discriminated against her while knowing that he had violated Federal law in his actions toward her.

Following the execution of the Settlement Agreement, plaintiff was ordered, by letter dated October 8, 2002, to appear for an examination pursuant to Civil Service Law § 72, which provides:

When in the judgment of an appointing authority an employee is unable to perform the duties of his or her position by reason of a disability......the appointing authority may require such employee to undergo a medical examination to be conducted by a medical officers selected by the civil service department or municipal commission having jurisdiction
. . .

Plaintiff alleges that this order was issued in retaliation for her expression of views during the settlement negotiations and in violation of the provision of the Settlement Agreement that prohibited retaliation against plaintiff. She did not attend the first appointment scheduled for her, but did appear on November 1, 2002, in response to Voss's direct threat to terminate her if she did not appear and her fear that termination might compromise her ability to enforce the settlement agreement. During the physical examination, plaintiff alleges that her breasts were examined, which she found humiliating and completely irrelevant to her ability to perform her job as a Clerk–Typist.

Plaintiff retired pursuant to the Settlement Agreement on December 29, 2002. However, she alleges that she has not been paid the $62,500 promised to her in the Agreement. The College alleges that she was not paid because she did not execute a release satisfactory to the College—i.e., a release that covered all claims through the date of her retirement (which would bar her claim for retaliation), rather than the release that appears to have been (and for purposes of this motion, was) signed contemporaneously with the Settlement Agreement. Obviously, the release plaintiff allegedly signed in September 2002 would not cover acts of retaliation that did not occur until October 2002.

Plaintiff's First and Second Claims for Relief sound in breach of contract, for breach of the settlement agreement; her Third Claim for Relief alleges retaliation in violation of ADEA and the ADA: her Fourth Claim alleges retaliation in violation of § 296 of the Executive Law of the State of New York; and her Fifth and Sixth Claims allege violations of 42 U.S.C. § 1983.

Defendant moves to dismiss the complaint on multiple grounds. Only one has merit. Plaintiff concedes that she cannot proceed under Section 296 of the Executive Law because she failed to file a Notice of Claim, as required by New York law.

Therefore, the Fourth Claim for Relief is dismissed on consent.

■ However, I cannot say that plaintiff will be unable to prove "no set of facts" entitling her to relief on her claims for breach of the Settlement Agreement. I have reviewed the Settlement Agreement, which is appended both to the moving papers and to plaintiff's response. It requires the execution of a mutually satisfactory release. It does not spell out what constitutes a "satisfactory" release, but neither does it state, or even imply, that such a release would cover all claims through the date of plaintiff's retirement. At a minimum, there would be a question of fact about what sort of release would be "satisfactory," given plaintiff's allegation that the release she signed was prepared and sent to the EEOC by defendants' counsel. But it is also possible that parol evidence about statements concerning the scope of any release would not be admissible.[1] While I am not foreclosing argument on this point, the terms of the Settlement Agreement appear at first blush to be reasonably clear and unambiguous, and thus are construable by the Court without reference to parol evidence. The integrated settlement agreement consists of the Settlement Agreement and a release. Ordinarily releases are executed at the time that Settlement Agreements are entered into, and this Settlement Agreement appears to contemplate that release will be executed simultaneously with the Agreement. The Settlement Agreement was signed on September 17, 2002, and while this is not a motion for summary judgment, I have already seen some evidence

suggesting that a release prepared by defendants (and thus, presumably, satisfactory to them) was executed on or about that date. A release as of September 17, 2002 that purported to release the College or its officers from misconduct yet to be committed—such as retaliation in violation of the Agreement or the relevant anti-discrimination statutes—would contravene public policy and could not be enforced. *Westmoreland Asbestos Co. v. Johns–Manville Corporation*, 39 F.Supp. 117, 120 (S.D.N.Y.1941). Therefore, plaintiff has more than adequately pleaded her first two claims, for violation of the Settlement Agreement.

■ The circumstances of the directive to plaintiff to submit to a physical examination—the timing of the order (coming as it did immediately after the settlement), the alleged reason for it (fear, based on past performance, that plaintiff could not perform her job duties in a satisfactory manner) and the fact that the alleged reason appears to run counter to the terms of the settlement (if defendants were not sure that plaintiff could perform her job, why did they sign an agreement in September 2002 that guaranteed her work through the end of the year?)—at least suggest the possibility of retaliation, if not for Baum's so-called "protected speech" (and there is a real question whether some of the speech pleaded qualifies as purely personal or relates solely to matters that were compromised by the Settlement Agreement), then perhaps for her complaining to the EEOC in the first place. While the evidence may reveal that defendant developed legitimate

---

1. Since the subjective but unexpressed intentions of the defendants about the release could never be considered—even if the terms of the release were deemed ambiguous and parol evidence were to be admitted, *see Wells v. Shearson Lehman/Am. Express*, 72 N.Y.2d 11, 24, 530 N.Y.S.2d 517, 524, 526 N.E.2d 8 (1988), *rearg.denied* 72 N.Y.2d 953, 533 N.Y.S.2d 60, 529 N.E.2d 428 (1988)—defendants' conclusory statements about what they would have found acceptable would never be considered by the Court, unless those ideas were expressed to plaintiff during the settlement negotiations.

apprehensions about plaintiff's ability to perform her job during the two weeks after the Settlement Agreement was signed, I cannot say at this point that plaintiff will never be able to prove a set of facts which would entitle her to relief, under some theory of either ADEA/ADA retaliation, or breach of contract, or both.

Defendants argue that Plaintiff's § 1983 retaliation claim cannot survive because she did not suffer any adverse employment action. As pleaded, plaintiff's First Amendment retaliation claim can fairly be described as weak. But I am constrained to note that her claim of ADEA/ADA retaliation—actionable because of the College's status as an arm of Rockland County, *see Feingold v. Hankin*, 269 F.Supp.2d 268, 274 (S.D.N.Y.2003)—does not require any adverse employment action other than the failure to live up to the terms of the Settlement Agreement, which are adequately alleged. Indeed, defendants admit that they have not paid plaintiff the money for which that Agreement provides. They assert that they do not have to. They may be right. But they may also be wrong. And if they are, a jury could fairly infer retaliation if the evidence sustains the facts pleaded in the complaint.

The time to sort all this out is after discovery, not at the pleadings stage. For that reason, the motion to dismiss the rest of plaintiff's claims is denied.